IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ENTERPRISE RENT-A-CAR | ) | MDL No. 2056 |
| WAGE & HOUR EMPLOYMENT | ) | |
| PRACTICES LITIGATION | ) | Misc. No. 09-210 |
| | ) | |
| | ) | Civil No. 07-1687 |
| NICKOLAS HICKTON, *et. al.*, | ) | Civil No. 09-0815 |
| | ) | Civil No. 09-0816 |
| Plaintiffs, | ) | Civil No. 09-0824 |
| | ) | Civil No. 09-0832 |
| v. | ) | Civil No. 09-0833 |
| | ) | Civil No. 09-1188 |
| ENTERPRISE RENT-A-CAR | ) | Civil No. 09-1321 |
| COMPANY, *et. al.*, | ) | Civil No. 10-1003 |
| | ) | Civil No. 10-1189 |
| Defendants. | ) | Civil No. 10-1456 |
| | ) | Civil No. 11-0071 |
| | ) | Civil No. 11-0333 |
| | ) | Civil No. 11-1024 |
| | ) | Civil No. 12-0659 |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Galia v. Enterprise Rent-A-Car | ) | |
| Company, Civil No. 09-0816 | ) | |
| | ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

*I. Introduction*

This opinion concerns sample plaintiff Robert Bajkowski ("Bajkowski"). Pending before

the court are eight motions for summary judgment filed by the relevant operating subsidiaries

(collectively "defendants") of defendant Enterprise Rent-a-Car Company ("ERAC") against

sample plaintiffs[1] selected from the cases consolidated in this multidistrict litigation ("MDL").

---

[1] The following individuals were selected as sample plaintiffs: Robert Bajkowski ("Bajkowski"); Joseph Biski;
Wayman F. Graham II; Kevin C. Hagler; Nils Hagstrom; Nickolas C. Hickton; Melinda McQuaig (formerly,
Melinda Herrin); and Brandon Singleton.

The consolidated cases involve allegations that defendants violated the compensation requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), by failing to pay plaintiffs overtime compensation.   Plaintiffs are or were assistant managers employed by one of the defendants.

This memorandum opinion addresses the motion for summary judgment filed by defendant Enterprise Leasing Company of Chicago, LLC ("ERAC-Chicago"), against Bajkowski.  (ECF No. 253.)[2]  ERAC-Chicago argues that Bajkowski qualified for the executive, administrative and combination exemptions from the compensation requirements of the FLSA. Bajkowski responds that summary judgment would be improper at this stage because there are genuine disputes of material facts concerning whether the "narrowly construed" FLSA exemptions are applicable.  ERAC-Chicago argues that no dispute is genuine because plaintiffs submitted declarations that violated the "sham affidavit" doctrine in an attempt to fabricate disputes of fact.  In response, Bajkowski argues that the sham affidavit doctrine is not applicable and that certain of the declarations filed in support of the motion for summary judgment were submitted in violation of Federal Rule of Civil Procedure 26.  Each of those arguments will be addressed.

After an extensive review of the parties' submissions, the hearing transcript of the oral argument and the applicable legal principles, the court concludes that in light of the summary judgment standard of review and the narrowness of the FLSA exemptions, ERAC-Chicago failed to satisfy its burden of proving as a matter of law that Bajkowski was properly classified as

---

[2] Unless otherwise indicated, all references in this opinion to CM/ECF electronic document filing numbers are made with reference to the MDL master docket, filed under the miscellaneous case number 2:09-mc-210.

exempt.  The motion for summary judgment filed by ERAC-Chicago against sample plaintiff

Bajkowski will be DENIED.


## II. Factual Background

Bajkowski was first employed by ERAC-Chicago as a management trainee in July 2003.

(Bajkowski Joint Concise Statement of Material Facts I ("Bajkowski JCS I") (ECF No. 405) ¶¶

1-2.)  He was promoted to assistant manager at Branch 15C1 in Chicago, Illinois in June 2006.

(Id. ¶ 4.)  On February 1, 2007, Bajkowski was transferred to Branch 15NH, located in Des

Plaines, Illinois.  (Id. ¶ 5.)  On June 12, 2007, he transferred to Branch 1553 in Skokie, Illinois.

(Id. ¶ 6.)

Bajkowski testified that, most of the time, his work as an assistant manager consisted of

writing tickets and renting cars, picking up customers, driving them back and cleaning cars.

(Bajkowski JCS I ¶ 7; Bajkowski Dep. (ECF No. 288-1) at 29.)  Bajkowski wrote on a

performance review that he spent sixty percent of his time on customer service management, but

explained during his deposition that he equated those responsibilities with writing tickets, renting

cars and washing cars.  (Bajkowski Dep. (ECF No. 288-1) at 29.)  He testified that those were

the same responsibilities he had as a management trainee and management assistant.  (Id. at 29.)

According to Bajkowski, there was little to no difference between the daily tasks assigned to

assistant managers and management trainees[3] while employed by ERAC-Chicago.  (Id. at 24.)

For example, Bajkowski explained that many of his duties as an assistant manager overlapped

with the work of nonexempt branch employees, including performing call backs, fleet

---

[3] Management trainees employed by ERAC-Chicago are classified as nonexempt employees under the FLSA.
(Bajkowski JCS I ¶ 3.)

management, responsibility for the branch cash box, and opening and closing the branch.  (Id. at 6, 29-30.)  Bajkowski's branch manager at the 15NH branch, Andrew Mikkila ("Mikkila"), averred in a declaration that Bajkowski "was in charge of fleet management." (Mikkila Decl. (ECF No. 288-3) ¶ 9.)   Mikkila also averred that Bajkowski was responsible for performing many tasks that other employees were not permitted to perform.  (Id. ¶ 8.)   Mikkila described two examples: (1)  Bajkowski had access to the credit card system to facilitate customer refunds (id.); and (2) Bajkowski was the only employee, other than the branch manager, with a set of keys to the store, and thus shared the responsibility with the branch manager to open and close the store each day.  (Id. ¶ 5.)

The parties dispute who had authority over the branch when the branch manager was not present. Mikkila averred that "[Bajkowski] was in complete control of the office when I was out marketing, when I had the day off, or when I was on vacation."  (Id. ¶ 11.)  Bajkowski testified at his deposition that he was "the last point of authority at his branches" when the branch manager was not present.  (Bajkowski Dep. (ECF No. 288-1) at 9.)  He also stated that in the absence of the branch manager, he was required to call the area manager regarding employee discipline because the area manager "was basically in charge."  (Id. at 7.) Bajkowski later averred in his supplemental declaration that "[w]hen the Branch Manager was away from the branch and unavailable, the Area Manager was responsible for the operation of the branch."  (Bajkowski Suppl.  Decl. (ECF No. 329, Ex. A) ¶ 9.)

The parties likewise dispute who had authority over the branch when both the branch manager and assistant manager were present.  Bajkowski testified that his schedule largely overlapped with that of his branch manager and the branch manager was present the majority of the time that Bajkowski was scheduled to work.  (Bajkowski Suppl. Decl. (ECF No. 329, Ex. A)

4

¶ 8.)  Bajkowski testified that when Mikkila was present, Mikkila always made decisions regarding fleet management because "he was in charge."  (Bajkowski Dep. (ECF No. 288-1) at 10.)  Bajkowski further testified that he never independently made fleet management decisions when Mikkila was present, but "would ask him first."  (Id.)  Jeff Ragona ("Ragona") , who was Bajkowski's area manager at ERAC-Chicago from April 2008 until October 2008, provided a declaration in which he stated that "[a]n Assistant Manager is empowered to supervise, direct, and delegate work to [subordinate] employees . . . [and] is also empowered to run a branch without a Branch Manager's supervision." (Ragona Decl. (ECF No. 288-4) ¶ 5.)  Ragona also averred that Bajkowski had been responsible for running the morning meeting at his branch every other day (alternating with the branch manager).  (Id. ¶ 13.)

Bajkowski testified that he did not conduct performance reviews of branch employees. (Bajkowski Dep. (ECF No. 288-1) at 15.)  Instead, Bajkowski added comments to a review after the form was completed by the branch manager.  (Id.)  While Bajkowski did not discipline employees, he recalled one instance when he complained about an incident involving an employee to his manager.  (Id. at 16.)  The employee was terminated for that incident "and a few other things," but Bajkowski did not recommend she be terminated and did not believe he had the authority to write her up.  (Id.)  He believed he was required to call the area manager if a disciplinary decision arose and the branch manager was unavailable.  (Id. at 7.)  Ragona, on the other hand, averred that "an Assistant Manager . . . may discipline or reprimand an employee if necessary." (Ragona Decl. (ECF No. 288-4) ¶ 5.)

With respect to training employees and scheduling their work, the parties dispute whether the assistant manager was responsible for those tasks.  Bajkowski testified that he did not have any role in scheduling employees and did not have the responsibility to teach, train, motivate or

manage employees.  (Bajkowski Dep. (ECF No. 288-1) at 10, 24.)  Ragona averred that

"[Bajkowski] was in charge of scheduling." (Ragona Decl. (ECF No. 288-4) at 5.)   Bajkowski

testified he was not responsible for planning employees' "flex plans," by which employees could

make marketing calls and return home without returning to the branch.  (Bajkowski Dep. (ECF

No. 288-1) at 28-29.)  Bajkowski recalled one instance where he counseled a branch employee

about a test based on his experience with the exam.  (Id. at 28.)  Mikkila averred that Bajkowski

"had the same responsibilities" as the branch manager regarding the managing of employees and

was "responsible for training the employees whenever we had down time."  (Mikkila Decl. (ECF

No. 288-3) ¶ 4.)

        Bajkowski acknowledged that on three occasions he conducted observational interviews

of management trainee candidates.  (Bajkowski JCS ¶¶ 57, 58.)  Bajkowski gave the candidates a

tour of the branch, asked the candidates predetermined questions, recorded the candidates'

responses, and transmitted the responses with his comments to ERAC-Chicago's human

resources personnel.  (Id. ¶ 57.)  Bajkowski believed his comments were considered by human

resources when making hiring decision with respect to the interviewees.  (Bajkowski Dep. (ECF

No. 288-1) at 7.)

        Bajkowski admitted to inflating his managerial percentages on his performance

evaluation because it would "look better under review."  (Id. at 29.)  While he indicated in his

performance evaluation that he spent ten percent of his time on human resources management,

he testified at his deposition that he probably only spent one percent of his time on those duties.

(Id.)  Likewise, he listed sales and marketing at ten percent on his evaluation, but testified at his

deposition that he thought the number was closer to six or seven percent.  (Id.)  He also put

"management of customer service" at 100%, but testified that at the time he had only been

employed as an assistant manager for one month and did not understand the form.  (Id. at 27.)
Bajkowski also overemphasized his assistant manager duties on his resume because "if I put I
washed cars and I rent[ed] cars . . . I wouldn't get a job so I . . . had to put something in [the
resume] to get a job. . . ."  (Id. at 38-39.)

Bajkowski's 2007 Form W-2 indicates that his total compensation as an assistant
manager in 2007 was $38,375.29.  (Bajkowski App. (ECF No. 329, Ex. F).)  Bajkowski testified
that he worked approximately sixty hours per week during his tenure as an assistant branch
manager.  (Bajkowski Dep. (ECF No. 288-1) at 17.)   Assuming fifty working weeks per year at
sixty hours per week, Bajkowski earned approximately $12.79 for each hour that he worked,
without being paid any overtime rates.[4]  The $12.79 hourly rate may be somewhat misleading.  If
Bajkowski had been classified as nonexempt (and had worked 60 hours in each of 50 weeks in
2007) his annual earnings of $38,375.29 would have reflected a starting hourly rate of
approximately $10.96 per hour.[5]   In 2007, management assistants earned between $11.19 and
$11.89 per hour; management trainees earned between $10.49 and $11.19 per hour; and car
prep/porters earned between $7.00 and $8.75 per hour.  (Hartline Decl. (ECF No. 288, Ex. 1) ¶
14.)

### III. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides in relevant part:

---

[4] $38,375.29 \div (50 \times 60) = 12.79$.

[5] The following equation was used to determine this hourly rate ($z$ = hourly rate):

$$50 \times (40z + 20(1.5 \times z)) = 38,375.29$$
$$50 \times (40z + 30 z) = 38,375.29$$
$$50 \times (70z) = 38,375.29$$
$$3500 \times z = 38,375.29$$
$$z = 38,375.29 \div 3500$$
$$z = 10.96$$

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

. . .

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B).

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could

8

rationally find in favor of the non-moving party in light of his burden of proof." (citing <u>Celotex</u>

<u>Corp.</u>, 477 U.S. at 322-23; <u>Anderson</u>, 477 U.S. at 248)).

> "[W]hen the moving party has carried its burden under Rule 56(c),
> its opponent must do more than simply show that there is some
> metaphysical doubt as to the material facts . . . .  Where the record
> taken as a whole could not lead a rational trier of fact to find for
> the nonmoving party, there is no genuine issue for trial."

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

<u>Corp.</u>, 475 U.S. 574, 586-87 (1986)).  The court must rely on the substantive law to identify

which facts are material.  <u>Abington Friends Sch.</u>, 480 F.3d at 256 (citing <u>Anderson</u>, 477 U.S. at

248).

In deciding a summary judgment motion, a court must view the facts in the light most

favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts

in favor of the nonmoving party.  <u>Woodside v. Sch. Dist. of Phila. Bd. of Educ.</u>, 248 F.3d 129,

130 (3d Cir. 2001); <u>Doe v. Cnty. of Centre, Pa.</u>, 242 F.3d 437, 446 (3d Cir. 2001); <u>Heller v.</u>

<u>Shaw Indus., Inc.</u>, 167 F.3d 146, 151 (3d Cir. 1999).  A court must not engage in credibility

determinations at the summary judgment stage.  <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>,

142 F.3d 639, 643 n.3 (3d Cir. 1998).

## IV. Discussion

The FLSA is a federal statute, originally enacted in 1938, and designed to combat

substandard labor conditions relating to unfair wages, overlong working hours and a variety of

other perceived evils.  At issue in this motion for summary judgment are some of the myriad

exemptions to the FLSA's overtime requirements.  Specifically, ERAC-Chicago claims that

Bajkowski was exempt from the FLSA's compensation requirements under one of the following exemptions:  1) executive, 2) administrative or 3) combination.

As a preliminary matter, before addressing the substantive arguments relating to FLSA exemptions, the court will address the two secondary arguments presented by the parties.  First, ERAC-Chicago argues that Bajkowski submitted a sham affidavit after his deposition, which this court should disregard in assessing the existence of genuinely disputed material facts.  Second, Bajkowski argues that ERAC-Chicago failed to disclose the identity of witnesses whose statements were attached to its motion for summary judgment, in violation of Rule 26 of the Federal Rules of Civil Procedure.

### A. Sham Affidavit Doctrine

ERAC-Chicago asserts that Bajkowski submitted a "sham affidavit."  Under the "sham affidavit" doctrine, district courts "'disregard[] an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony.'"  Seitz v. Detweiler, Hershey and Assocs., P.C. (In re CitX Corp.), 448 F.3d 672, 679 (3d Cir. 2006) (quoting Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004)); see, e.g., Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 252 (3d Cir. 2007) (holding that to permit the plaintiffs to engineer factual disputes by means of self-serving affidavits "'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact'" (quoting Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 577-78 (2d Cir. 1969))); Zalewski v. PNC Fin. Servs. Group, Inc., No. 06-1231, 2008 U.S. Dist. LEXIS 70026, at *4 (W.D. Pa. Feb. 4, 2008) (second report and recommendation) (granting summary judgment based on employee's "performance evaluations . . . , her contemporaneous reporting of her job

responsibilities, [her] resume, and her deposition testimony"), adopted by Memorandum

Opinion, Zalewski v. PNC Fin. Servs. Group, Inc., No. 06-1231 (W.D. Pa. Apr. 7, 2008).

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot

maintain a consistent story or is willing to offer a statement solely for the purpose of defeating

summary judgment." Jiminez, 503 F.3d at 253. Because the trial court is vested with the

inherent power to grant summary judgment on disputed records, Anderson v. Liberty Lobby, 477

U.S. 242, 251 (1986), the court may conclude that no reasonable jury could accord evidentiary

weight to an affidavit that is clearly offered solely for the purpose of defeating summary

judgment. Jiminez, 503 F.3d at 253. The practical underpinning of the sham affidavit doctrine

"is that prior depositions are more reliable than affidavits." Id.

In Jiminez the Court of Appeals for the Third Circuit recognized that other courts of

appeals have "adopted a particularly robust version of the sham affidavit doctrine, holding that,

whenever a subsequent affidavit contradicts prior deposition testimony, it should be

disregarded." Id. at 254. The Court of Appeals for the Third Circuit has "adopted a more flexible

approach." Id. The court recognized in Jiminez that "not all contradictory affidavits are

necessarily shams." Id. Notably, "'[w]hen there is independent evidence in the record to bolster

an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." Id.

(quoting Baer v. Chase, 392 F.3d 609, 625 (3d Cir. 2004)). "Such corroborating evidence may

establish that the affiant was 'understandably' mistaken, confused, or not in possession of all the

facts during the previous deposition," and the affiant should have the opportunity to provide a

"satisfactory explanation" for the conflict between the prior deposition and the affidavit. Id.; see

Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988) ("When, as in the

present case, the affiant was carefully questioned on the issue, had access to the relevant

11

information at the time, and provided no satisfactory explanation for the later contradiction, the

courts of appeals are in agreement that the subsequent affidavit does not create a *genuine* issue of

material fact.").

When deposition testimony is ambiguous or incomplete, subsequent affidavits may be

provided to clarify the testimony and will not be discarded as sham documents.  See Lytle v.

Capital Area Intermediate Unit, No.1:05-CV-0133, 2009 WL 82483, at *2 (M.D. Pa. Jan. 9,

2009) ("Situations may arise where an affidavit does not 'raise a new or distinct matter,' but

rather explains certain aspects of a deposition testimony that caused confusion." (quoting Baer,

392 F.3d at 625)).  To that end, "[d]isregarding statements in an affidavit is appropriate on 'clear

and extreme facts' . . . when the affidavit is 'flatly contradictory' to the prior testimony . . . ."

Coleman v. Cerski, No. 3:04-cv-1423, 2007 WL 2908266, at *5 (M.D. Pa. Oct. 4, 2007) (quoting

Videon Chevrolet, Inc. v. Gen. Motors Corp., 992 F.2d 482, 488 (3d Cir. 1993)).  When

allegations in a subsequent affidavit could support statements made in prior deposition

testimony, the dueling statements "are more appropriately dealt with on cross-examination than

on summary judgment."  Ragan v. Fuentes, No. 05-2825, 2007 WL 2892948, at *11 (D.N.J.

Sept. 28, 2007).

Bajkowski's original declaration is dated October 20, 2009.  He was deposed on January

20, 2010, and submitted a supplemental declaration dated January 31, 2010.  Bajkowski argues

the two declarations are consistent with each other and with his deposition testimony.

Specifically, paragraph 5 of Bajkowski's original declaration states in relevant part:

> [When] I had the title of Assistant Manager . . . I did not make
> recommendations that were given any weight about whether any
> employee should be hired or fired.

(Bajkowski Decl. (ECF No. 329, Ex. B) ¶ 5.)  In paragraph 5 of Bajkowski's supplemental

declaration, he stated:

> At no time did I believe I had the ability to recommend that an
> applicant be hired or fired, and I was not asked to give any input
> on these decisions by the Branch Manager or the Area Rental
> Manager.

(Bajkowski Suppl. Decl. (ECF No. 329, Ex. A) ¶ 5.)

Paragraph 5 of the supplemental declaration does not flatly contradict Bajkowski's

deposition testimony.  It does not contradict his deposition testimony that on three occasions he

was directed to tour the branch with potential hires, ask pre-printed questions, write down

responses and submit them with comments[6] to human resources.  Conversely, in his deposition,

he never testified that the branch manager or area manager asked him for input concerning

hiring. To that end, defense counsel did not inquire during the deposition whether Bajkowski

believed he could recommend to his branch manager or area manager that an applicant should be

hired.  Bajkowski's deposition clearly indicates that he sent his comments to "H.R." and that it

was his understanding that "H.R." would consider his comments. (Bajkowski Dep. (ECF No.

288-1) at 19.)  He testified at his deposition that ultimate hiring decisions were made by the "area

rental manager."  (Id. at 41.)  He stated that all candidates he interviewed were subsequently

interviewed by the branch and area manager and that he believed the checklist he submitted

"didn't . . . matter[] because [the candidates] would go for the next interview either way."  (Id. at

40.)  The statements in paragraph 5 are not "flatly contradictory" because there are reasonable

situations in which both the deposition testimony and the supplemental declaration could be true,

---

[6] According to his deposition testimony and evidence introduced during the deposition, Bajkowski added
perfunctory comments, such as "I think Laurel is a good candidate to work for Enterprise" and "I think Jen would be
a great addition to our team," to his "assistant branch manager interview checklist." (Bajkowski Dep. (ECF No. 288-
1) at 19, 20.)

and because a reasonable jury could afford evidentiary weight to the averments in the

supplemental affidavit.  See Jiminez, 503 F.3d at 253.

In paragraphs 3, 6 and 9 of Bajkowski's supplemental declaration he respectively stated

in pertinent part:

> I recall while employed [as Assistant Manager] the Branch Manager was responsible for the operation and management of the branch, including the following: . . . directing and supervising the work of branch employees . . . .
>
> . . .
>
> As Assistant Manager I rarely directed the work of other branch employees.  On those occasions when I did, however, it was in accordance with the explicit directives given to me by the Branch Manager. . . .
>
> . . .
>
> When the Branch Manager was away from the branch and unavailable, the Area Manager was responsible for the operation of the branch . . . .

(Bajkowski Suppl. Decl. (ECF No. 329, Ex. A) ¶¶ 3, 6, 9.)[7]  Defendant alleges these paragraphs

contradict Bajkowski's testimony that he "ran the branch" for the four of the six months that he

was without a branch manager, and that he was "the last point of authority at his branches."  (See

Defs.' Reply at 3, 5.)  Bajkowski responds that defendant uses this four-month period where he

assumed the role of "acting branch manager" to characterize his entire two-year period of

employment as an assistant manager, which is inaccurate and does not create a genuine sham

affidavit issue.

---

[7] The court notes that Bajkowski's original *pre-deposition* declaration contains the selected portions of paragraphs 3 and 6 verbatim.

Bajkowski's supplemental declaration does not contradict his prior deposition testimony that he "ran the branch" for four months.  The supplemental declaration applies to his tenure generally, while the deposition testimony was clearly directed at a limited time period where his branch manager was on medical leave.  ERAC-Chicago's argument that Bajkowski's supplemental declaration contradicts his prior testimony regarding being the last point of authority in his branch when the manager was not present must fail to the extent that declaration is not contradictory with respect to the entire time frame of his employment.  It can be explained as applying when the absence was not extended—i.e., a medical leave.  The supplemental declaration explains and expands Bajkowski's testimony without explicitly or flatly contradicting it.

Because the supplemental declaration is not flatly contradictory of prior deposition testimony, the court will not disregard Bajkowski's supplemental declaration.  The court does, however, note that ERAC-Chicago could not meet its substantial burden of proof even if the supplemental declaration were disregarded.  There would still be sufficient genuinely disputed material facts to preclude the court from entering summary judgment in ERAC-Chicago's favor.

### B. Rule 26 Disclosures

Plaintiffs assert that statements submitted by defendants in support of the various motions for summary judgment were made in violation of Federal Rule of Civil Procedure 26.  Defendants argue that they satisfied their Rule 26 obligations because the identities of the declarants were disclosed in the course of depositions.  Attached to ERAC-Chicago's motion for summary judgment were the declarations of Ragona, Mikkila, and Teshena Hartline ("Hartline," and together with Ragona and Mikkila, "declarants"), all of whom are employees of ERAC-

Chicago.  (ECF No. 288.)   ERAC-Chicago argues that the identity of two of the three declarants was disclosed to Bajkowski through the course of discovery.  The record indicates that Ragona was present at Bajkowski's deposition.  (e.g., Bajkowski Dep. (ECF No. 288-1) at 3.)   The record also indicates that Mikkila's role in the litigation was discussed at the deposition.  (see, e.g., id. at 10.)   Defendant admits that Hartline's identity was not otherwise made known to the plaintiffs during discovery.  (Defs.' Suppl. Br. on the Sufficiency of Disclosures (ECF No. 769) at 13 n.2.)

A party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  FED. R. CIV. P. 26(a)(1)(A)(i).  "A party must make its initial disclosures based on the information then reasonably available to it.  A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures."  FED. R. CIV. P. 26(a)(1)(E).

Under Federal Rule of Civil Procedure 26(e)(1):

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> **(B)** as ordered by the court.

Rule 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified *or is harmless*." FED. R. CIV. P. 37(c) (emphasis added); see Sherrod v. Lingle, 223 F.3d 605, 612 (7th Cir. 2000).

Because the court is denying this motion for summary judgment, it need not rule on the propriety of the disclosures under Rule 26.   Instead, the discretionary application of Rule 37 sufficiently disposes of the issue, because, presuming defendants did violate Rule 26, the presumed violations would have been harmless.  The imposition of Rule 37 sanctions is within the discretion of this court.  Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995).  There are several factors which courts of appeals will consider in evaluating how this court exercises its discretion regarding Rule 37 sanctions.  In re TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999).  This court will use those factors as a guide in applying its discretion. The factors are:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified,
>
> (2) the ability of that party to cure the prejudice,
>
> (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and
>
> (4) bad faith or willfulness in failing to comply with the district court's order.

Id. (citing <u>Meyers v. Pennypack Woods Home Ownership Ass'n</u>, 559 F.2d 894, 904-05 (3d Cir. 1977)).

Bajkowski was given the opportunity to pursue additional discovery of declarants before the court ruled on the motion for summary judgment and chose not to do so.  (Tr. of Continued Arg. (ECF No. 807) at 117, July 25, 2011.)  The only relief requested by plaintiffs in the briefing on this issue is a "request that the Court disregard the declarations of Defendants' witnesses provided after the close of the summary judgment discovery period."  (Pl.'s Resp. to Defs.' Suppl. Br. on the Sufficiency of Disclosures (ECF No. 791) at 2.)  There is no pending motion for sanctions.  As the court explains *infra* in Section IV.C, genuinely disputed material facts compel a resolution of this motion in favor of Bajkowski.  Thus, to the extent the court relied on declarants' testimony, the reliance was harmless, as the only relief requested by Bajkowski relates to the court's determination of this motion, on which Bajkowski ultimately prevailed.

Applying the <u>TMI</u>/<u>Meyers</u> factors, the court finds: first, there is no prejudice to Bajkowski, as explained above; second, Bajkowski had the opportunity to conduct further discovery with respect to the declarants, but chose not to do so, and could have cured any perceived prejudice; third, efficient administration of this multidistrict litigation compels the court to resolve this summary judgment motion without further procedural delay or complicated wrangling of the record without purpose; and fourth, the court finds no bad faith on the part of ERAC-Chicago.  For these reasons, and all the reasons listed above, but primarily because the court is resolving the summary judgment in favor of Bajkowski, there is no need to disregard the statements of the declarants, as requested by Bajkowski.

*C. The FLSA Exemptions*

*1. General Framework*

The FLSA exempts from its overtime provisions "any 'employee in a bona fide executive, administrative, or professional capacity.'" Soehnle v. Hess Corp., 399 F. App'x 749, 750 n.1 (3d Cir. 2010) (quoting 29 U.S.C. § 213(a)(1)). Additionally, the FLSA exempts from its overtime provisions "[e]mployees who perform a combination of exempt duties." 29 C.F.R. § 541.708.

In light of the broad remedial purpose of the FLSA,[8] exemptions are narrowly construed against the employer. Madison v. Resources for Human Dev., Inc., 233 F.3d 175, 183 (3d Cir. 2000). An FLSA exemption is properly characterized as an affirmative defense. Id. at 180-81, 183. Thus, "[t]he burden of proof to establish that its employees come within the scope of an overtime exemption is on the employer." Friedrich v. U.S. Computer Serv., 974 F.2d 409, 412 (3d Cir. 1992). "[I]f the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991).

ERAC-Chicago bears the burden of proving that Bajkowski was exempt from the overtime provisions of the FLSA. Id. In order for summary judgment to be granted, ERAC-Chicago must establish all the essential elements of the exemption to the extent required by the summary judgment standard discussed above. If a reasonable jury could find that ERAC-Chicago did not meet its burden with respect to just one element of the exemptions, it would be

---

[8] "The Fair Labor Standards Act is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted." Brock v. Richardson, 812 F.2d 121, 123 (3d Cir. 1987); see De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 373 (3d Cir. 2007); Sperling v. Hoffman-La Roche Inc., 862 F.2d 439, 446-47 (3d Cir. 1988) (relying on the FLSA's "broad remedial purpose" as a basis for a liberal construction of the statute in favor of potential plaintiffs).

compelled to return a verdict in favor of Bajkowski.  As such, summary judgment is

inappropriate here unless there are no genuine issues as to material facts with respect to *any* of

the elements of the exemption.  Each exemption, however, is independently sufficient to provide

the basis for judgment in favor of ERAC-Chicago.  <u>See</u> 29 U.S.C. § 213(a)(1) ( providing that

"any employee employed in a bona fide executive, administrative, *or* professional capacity" is

exempt (emphasis added)).  To prevail, ERAC-Chicago must establish a lack of genuinely

disputed material facts with respect to *all* the elements of at least one of the asserted exemptions.

The Secretary of Labor has statutory authority to publish FLSA regulations to aid courts

in determining the scope of exemptions and has exercised that authority.  69 Fed. Reg. 22,121

(Apr. 23, 2004).  Section 13(a)(1)  of the FLSA provides that "any employee employed in a bona

fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman

*as such terms are defined and delimited from time to time by regulations of the Secretary*" is

exempt.  29 U.S.C. § 213(a)(1) (emphasis added).  Unlike prior regulations, the currently

applicable 2004 regulations were adopted after notice and comment and fall within the ambit of

the Secretary's legislative rule-making authority.  69 Fed. Reg. 22,121, 22,124 (Apr. 23, 2004).

These regulations are, therefore, entitled to <u>Chevron</u> deference.  <u>See</u>  <u>Chevron USA v. Natural</u>

<u>Res. Def. Council</u>, 467 U.S. 837 (1984); <u>Cash v. Cycle Craft Co., Inc.</u>, 508 F.3d 680, 683. (1st

Cir. 2007).

Under the regulations, exempt work includes any work which is "directly and closely

related to the performance of exempt work."  29 C.F.R. § 541.703.  The regulations provide the

following guidance:

> The phrase "directly and closely related" means tasks that are
> related to exempt duties and that contribute to or facilitate
> performance of exempt work. Thus, "directly and closely related"

> work may include physical tasks and menial tasks that arise out of exempt duties, and the routine work without which the exempt employee's exempt work cannot be performed properly. Work "directly and closely related" to the performance of exempt duties may also include recordkeeping; monitoring and adjusting machinery; taking notes; using the computer to create documents or presentations; opening the mail for the purpose of reading it and making decisions; and using a photocopier or fax machine. Work is not "directly and closely related" if the work is remotely related or completely unrelated to exempt duties.

Id.  In a similar vein, "[o]ccasional, infrequently recurring tasks that cannot practicably be performed by nonexempt employees" are exempt when they are done as a means of performing an exempt task. 29 C.F.R. § 541.707.  The court should consider the following factors in determining whether occasional tasks are exempt: (1) "[w]hether the same work is performed by any of the exempt employee's subordinates"; (2) the "practicability of delegating the work to a nonexempt employee"; (3) "whether the exempt employee performs the task frequently or occasionally"; and (4) "existence of an industry practice for the exempt employee to perform the task." Id.

The executive, administrative and combination exemptions will be addressed in order.

### *2.  The Executive Exemption*

An exempt "executive" is any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;[9]

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

---

[9] The parties do not dispute that plaintiffs satisfied the "salary basis" requirement of the executive and administrative exemptions. This memorandum opinion, therefore, will not discuss that element of the exemptions.

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

### (a)  Management as Primary Duty

The regulations provide a nonexhaustive list of "management" duties.  29 C.F.R. § 541.102.[10]  An employee may concurrently perform nonexempt duties and still qualify for the executive exemption as long as the requirements of § 541.100 (including the primary duty requirement) are otherwise satisfied.  Id. § 541.106.

The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a); see Reich v. Wyoming, 993 F.2d 739 742 (10th Cir. 1993) (providing that the employee's primary duty is that which is of principal importance to his or her employer); Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982) (finding assistant manager's primary duty to be that which is most critical or important to

---

[10] Section 541.102 provides:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102

success of the business).   Thus, "[d]etermination of an employee's primary duty must be based

on all the facts in a particular case, with the major emphasis on the character of the employee's

job as a whole."  29 C.F.R. § 541.700(a). The regulations identify four nonexhaustive factors to

consider when determining an employee's primary duty, including:

> (1) "the relative importance of the exempt duties as compared with
> other types of duties;"
>
> (2) "the amount of time spent performing exempt work;"
>
> (3) "the employee's relative freedom from direct supervision; and"
>
> (4) "the relationship between the employee's salary and the wages
> paid to other employees for the kind of nonexempt work performed
> by the employee."

Id.  The amount of time spent in the performance of exempt work may be a useful guide in

determining whether exempt work is an employee's primary duty.  Id.  Employees who spend

more than half of their time on exempt work generally satisfy the primary duty requirement.  Id.

The regulations caution, however, against blind adherence to a time-based analysis, as time spent

on exempt work is only one of the four nonexhaustive factors to consider.  Id. [11]

Each of the four factors will be considered in order.

First, with respect to the relative importance of exempt duties, Bajkowski testified that

approximately sixty percent of his time as an assistant manager was spent writing rental tickets,

---

[11] The regulations provide the following example of the application of the primary duty analysis:

> [A]ssistant managers in a retail establishment who perform exempt executive
> work such as supervising and directing the work of other employees, ordering
> merchandise, managing the budget and authorizing payment of bills may have
> management as their primary duty even if the assistant managers spend more
> than 50 percent of the time performing nonexempt work such as running the
> cash register. However, if such assistant managers are closely supervised and
> earn little more than the nonexempt employees, the assistant managers generally
> would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c).

cleaning and washing cars, and picking up and dropping off customer's cars.   All these duties are nonexempt, nonmanagerial duties.  Importantly, these nonexempt duties were the same types of tasks he was charged with executing as a management trainee and management assistant. Bajkowski repeatedly testified that the branch manager had authority to manage the branch, train employees, hire, fire and discipline and conduct performance appraisals, and set the shift schedules.  Viewing the facts in the light most favorable to Bajkowski, his performance of any of those exempt duties, to the extent it occurred, was extremely limited in frequency and scope.

ERAC-Chicago focuses the court's attention on Bajkowski's resume and performance evaluation as undeniable evidence that Bajkowski's managerial duties were more important than his ancillary nonexempt tasks.  Bajkowski stated in his deposition that the percentages on the performance evaluation were inaccurate reflections of his actual duties, and his statements in his resume were inflated to obtain employment.  He also clarified that he believed the term "customer service management" (which he indicated he spent sixty percent of his time performing) meant writing tickets, renting cars and washing cars, none of which are exempt duties.  To the extent the resume discredits Bajkowski's testimony, such determinations are appropriately left for a jury.

Additionally, ERAC-Chicago points to Bajkowski's four-month period of employment at the 15C1 branch where no branch manager was present as indicative of the importance of Bajkowski's managerial duties.  The court finds problematic ERAC-Chicago's reliance on this time period to demonstrate Bajkowski's primary duty was management.  While Bajkowski indicated he gave direction to employees, those instances were limited to the four-month period during which the branch manager was absent.  (See Bajkowski Dep. (ECF No. 288-1) at 9 ("Yeah, the time when I was . . . was by myself, then it was either me or MT would . . . would go

24

and do it.").)  The court must consider the totality of Bajkowski's employment circumstances, construing any conflicts in the light most favorable to Bajkowski.  Given the circumstances set forth by the parties, there is a genuine dispute regarding whether Bajkowski's nonexempt duties during the period when he was not acting as the branch manager were more important than his exempt duties.  Thus, because the court must resolve all doubts in favor of Bajkowski, the court concludes that a reasonable jury could find that the first factor favors Bajkowski.

Second, regarding the amount of time spent on exempt work, the largest amount of Bajkowski's time as an assistant manager (60%) was spent renting cars, writing tickets, driving customers and washing cars.  Many of Bajkowski's allegedly exempt responsibilities were shared by nonexempt employees and subject to the supervision and approval of the branch manager. ERAC-Chicago argues that Bajkowski's performance of nonexempt duties does not preclude a finding that the executive exemption applies.  The converse is also true: mere performance of exempt duties does not preclude a finding of nonexempt employment status.  The court must balance and weigh the amount of time spent on exempt and nonexempt work as part of its determination of Bajkowski's primary duty.  Given the summary judgment standard, and Bajkowski's testimony regarding his allocation of time between exempt and nonexempt work at ERAC-Chicago, the court concludes that a reasonable jury could find the second factor favors Bajkowski.

Third, with respect to freedom from supervision, Bajkowski testified about the supervision and control exercised by his branch manager over him and the other employees in the branch office.  Specifically, the branch manager was responsible for scheduling, training, hiring and firing, discipline and performance evaluations.  Bajkowski stated that his schedule largely overlapped with the branch manager's schedule and that his branch manager was present

the majority of the time he was scheduled to work.  The branch manager directed and supervised

Bajkowski's work.  Bajkowski was required to ask the branch manager before making fleet

management decisions because the branch manager "was in charge."  (Bajkowski Dep. (ECF No.

288-1) at 10.)   Bajkowski testified that in the absence of the branch manager, he was required to

call the area manager regarding employee discipline because the area manager "was basically in

charge."  (Id. at 7.)   He provided in his supplemental declaration that "[w]hen the Branch

Manager was away from the branch and unavailable, the Area Manager was responsible for the

operation of the branch."  (Bajkowski Suppl.  Decl. (ECF No. 329, Ex. A) ¶ 9.)  Resolving

factual disputes in Bajkowski's favor, a reasonable jury could find the area manager was

responsible for the operation of the branch, including the monitoring and supervising of branch

employees, in the branch manager's absence.

ERAC-Chicago asserts that Bajkowski's delegation of work and monitoring of other

employees demonstrates that management was his primary duty.  Examples of Bajkowski

directing the work of other employees are scant, especially considering that much of that

direction occurred when Bajkowski was managing the 15C1 branch when the branch manager

was on medical leave.  Considering the totality of the circumstances, there is a genuine dispute

concerning whether Bajkowski was free from direct supervision. The third factor favors

Bajkowski because a reasonable jury could find he was not free from supervision.

Fourth, the court must consider Bajkowski's wage in relation to nonexempt employees.

Based upon fifty work weeks per year at sixty hours per week, Bajkowski earned approximately

$12.79 per hour worked.[12]  If a nonexempt employee had the same annual earnings and worked

---

[12] $38,375.29 \div (50 \times 60) = 12.79$.

the same hours per week, his base hourly rate would be $10.96 per hour.[13]   Thus, Bajkowski was

paid the same amount as a hypothetical nonexempt employee who worked the same amount of

hours as him, and was paid a $10.96 hourly wage.[14]   The next position below Bajkowski was the

management assistant position.   Employees in those positions earned between $11.19 and $11.89

per (non-overtime) hour in 2007.   Even at the low end, management assistants only earned $1.60

less (or 14% less) per hour than Bajkowski but, unlike him, they were compensated for overtime

hours.   At $11.19 per hour, with overtime, the least paid management assistant who worked sixty

hours per week for fifty weeks would earn $39,165 annually, which is $789.71 or 2.1% more

than Bajkowski earned in 2007.   A reasonable jury could find this factor favors Bajkowski.

---

[13] The following equation was used to determine this hourly rate ($z$ = hourly rate):

$$50 \times (40z + 20(1.5 \times z)) = 38{,}375.29$$
$$50 \times (40z + 30z)) = 38{,}375.29$$
$$50 \times (70z) = 38{,}375.29$$
$$3500 \times z = 38{,}375.29$$
$$z = 38{,}375.29 \div 3500$$
$$z = 10.96$$

[14] A few courts have discouraged the use of mathematics to compare wages with salaries, as this court has done. See, e.g., Taylor v. Autozone Inc., No. CV 10–08125–PCT–FJM, 2012 WL 254238, at *11 (D. Ariz. Jan. 27, 2012); Moore v. Tractor Supply Co., 352 F. Supp. 2d 1268, 1279 (S.D. Fla. 2004) (holding that the court should not perform "mathematical gymnastics," such as dividing an employee's weekly salary by the number of hours he worked to determine his hourly wage, but should instead "simply compare[] the manager's weekly salary with the highest possible non-exempt weekly wage" (assuming forty hours of work)).   To compare a weekly salary with an hourly wage is to compare apples with oranges.   Ultimately, in order to make a comparison, the court must engage in some amount of mathematical extrapolation.   For example, in Moore, although the court dismissed the use of mathematics, in order to make a meaningful comparison, the court was required to assume forty hours worked by nonexempt employees to determine a "weekly wage."   352 F. Supp. 2d at 1279.   The court finds the approach utilized in this opinion to be the most useful and appropriate way to provide a meaningful comparison.   Instead of making unsupported assumptions about the number of hours worked, the court is resolving factual disputes in light of the summary judgment standard.   Support for this court's approach is found in a decision of the Court of Appeals for the Third Circuit:

> [T]he regulation requires an analysis of the relationship between the foremen's salary and the wages paid to the crew members.   The foremen's salary here breaks down to $129 per nine-hour day.   The crew members receive $106.50 per eight-hour day.   If the crew members worked nine hours, their daily wage would come to $126.47 (with overtime).   There are, however, some benefits that the foremen receive that the hourly workers do not. . . . In sum, this evidence, while inclined in favor of exempt status, is not compelling.

Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1146 (3d Cir. 1983).

Because the court concludes that, when viewing the facts in the light most favorable to Bajkowski, the four primary duty factors collectively could be found in Bajkowski's favor, it is for a jury to determine whether his primary duty was management. A reasonable jury could conclude that Bajkowski's nonexempt tasks—like preparing cars and renting to customers—were his duties of principal importance to ERAC-Chicago, see Reich v. Wyoming 993 F.2d 739, 742 (10th Cir. 1993), and were most critical or important to the success of ERAC-Chicago, see Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982).   A jury could reasonably conclude that his most critical or important purpose to ERAC-Chicago was to perform the necessary menial functions remaining after the nonexempt management assistants and trainees had used their forty hours (without incurring any overtime expenses to ERAC-Chicago).

### (b) Customarily and Regularly Directs Work of Two or More Employees

To qualify under the executive exemption, an employee must customarily and regularly direct the work of two or more other employees.  29 C.F.R. § 541.100(a)(3).  According to the regulations:

> The phrase "customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks.

29 C.F.R. § 541.701.   "An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence, does not meet this requirement."  Id. § 541.104(c).

ERAC-Chicago did not meet its burden to demonstrate that, as a matter of law, Bajkowski customarily and regularly directed the work of two or more full time employees.  "An

employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence, does not meet this requirement." Id.  Accepting Bajkowski's deposition testimony, the branch manager was responsible for training branch employees, directing and supervising their work, motivating and managing them, and setting the work schedule.   ERAC-Chicago's cursory, two-sentence argument regarding this element of the executive exemption culminated with a bare assertion that this element was undisputed.  To the contrary, genuine issues of fact remain about the extent to which Bajkowski shared in supervision of branch employees with the branch manager.  His testimony indicates that he directed the work of employees for a four-month period while his branch manager was on medical leave.  He clearly states, however, that he did not share those functions during the rest of his tenure. (Bajkowski Dep. (ECF No. 288-1) at 9.)[15]  As discussed above in Part IV.A, Bajkowski's deposition testimony that he was the last point of authority *in the branch* in the absence of the branch manager could be consistent with his supplemental declaration testimony that the area manager—although outside the branch—was responsible for the branch in the branch manager's absence.  The court concludes there are material and genuinely disputed facts regarding who was in charge of an ERAC-Chicago branch when Bajkowski was not present.

Directing the work of other employees was infrequent and limited to instances when Bajkowski either ran the 15NH branch during the branch manager's medical leave, or during other instances when the branch manager was absent.  Accepting the facts in the light most favorable to Bajkowski, the branch manager—except for a four-month period when he was on medical leave—was scheduled to work with Bajkowski the majority of the time.  Under those

---

[15] At Bajkowski's deposition, after he stated that he often directed the work of employees during the four-month period, the examining attorney asked, "you also engaged in those same basic functions when you were at [branch 15NH], too, didn't you?"  (Bajkowski Dep. (ECF No. 288-1) at 9.)  Bajkowski responded, "[n]o, then it was a manager called to do all those things."  (Id.)

circumstances a reasonable jury could find that any direction Bajkowski gave to branch

employees occurred infrequently at most—except during that four-month period.  The court

concludes that ERAC-Chicago failed to meet its burden to satisfy this factor of the executive

exemption because a reasonable jury could conclude that, except during a four-month period

when Bajkowski served as acting manager: (1) Bajkowski did not supervise two or more full-

time employees on a customary and regular basis, and (2) Bajkowski "merely assist[ed] the

manager … and supervise[d] . . . only in the actual manager's absence. . . . "  29 C.F.R. §

541.104(c).

### *(c)  Authority to Hire, Fire, or Effect Some "Other Change of Status"*

   In order to qualify as an exempt executive, an employee must have authority to hire or

fire other employees, or have particular weight given to his or her suggestions and

recommendations regarding hiring, firing, promotion, advancement or other changes of status.

29 C.F.R. § 541.100(a)(4).  "[O]ther change of status" means any "tangible employment action"

as that term is commonly used under Title VII, such as "reassignment with significantly different

responsibilities."  69 Fed. Reg. 22,122, 22,131 (Apr. 23, 2004).    In the Title VII context, the

Supreme Court has defined "tangible employment action [to] constitute[] a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits."  Burlington

Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see Pa. State Police v. Suders, 542 U.S. 129,

144 (2004).  "A tangible employment action in most cases inflicts direct economic harm."

Burlington Indus., 524 U.S. at 762.

To determine whether an employee's suggestions and recommendations are given "particular weight," it is not required that the employee have final authority regarding any of the above-listed changes of employment status.  29 C.F.R. § 541.105.  Instead, courts should consider whether making suggestions is part of the employee's job description or duties, whether suggestions are made or requested frequently, and whether they are frequently relied upon.  Id.; see Davis v. Mountaire Farms, Inc., 453 F.3d 554, 558 (3d Cir. 2006) (finding crew leaders of chicken catchers to be nonexempt when they could not hire or fire employees, but had limited authority to borrow workers from other crews, and made referrals to their employer regarding prospective employees).

Bajkowski was not responsible for the hiring, firing, advancement, promotion or other changes of the status of branch employees.  ERAC-Chicago only pointed to three instances in which Bajkowski played some role in the hiring of three management trainees.  While it is evident that Bajkowski was a part of the hiring process, it is obvious that his role was limited. He gave a tour, asked predetermined questions, wrote down answers and provided single sentence, perfunctory comments.  He testified that he believed candidates would always reach the next stage of the interview process regardless of his comments.  He did not ultimately hire or fire anyone, he did not conduct performance evaluations, and he did not discipline employees. With respect to the performance evaluations, Bajkowski simply filled in a brief comments section after the branch manager had completed the form.

ERAC-Chicago contends that other employees testified that Bajkowski contributed to the hiring process and that interviews with potential employees were one of the differences between assistant managers and management trainees.  While Bajkowski contributed to the hiring and performance appraisal process, mere contribution is not what is required by the regulation.  An

employee must have independent authority to hire and fire or his suggestions must be given particular weight. With regard to authority to hire and fire, genuine disputes exist. Bajkowski testified that in the absence of the branch manager, he believed he was required to call the area manager if a disciplinary situation arose. If he could not independently discipline or reprimand employees, a reasonable jury could likewise find he could not have independently fired them. He also testified that he did not have the authority to fire or hire employees. At the summary judgment stage the court is in no position to discredit this testimony.

With respect to particular weight, the court must consider whether suggesting employment actions is part of the employee's job description or duties, whether suggestions are frequently made or requested, and whether they are frequently relied upon. 29 C.F.R. § 541.105; Davis v. Mountaire Farms, Inc., 453 F.3d 554, 558 (3d Cir. 2006). There are genuine disputes with respect to this component as well. Specifically, it is unclear to what extent Bajkowski's comments, both on performance reviews and interview checklists, were relied upon. It is also disputed whether suggestions were made with any frequency. Resolving doubts in favor of Bajkowski, the court finds that Bajkowski minimally participated in three job interviews, reported the bad behavior of one co-worker who was ultimately fired, and did not believe he was permitted to discipline or otherwise affect the advancement and promotion of his co-workers beyond providing good leadership to them. Because there are material facts in dispute, a jury should be permitted to determine whether Bajkowski's suggestions were given "particular weight."

Because there are material facts in dispute with regard to three of the four elements of the executive exemption, ERAC-Chicago failed to meet its burden and summary judgment cannot be granted on the basis of the executive exemption.

### *3.  The Administrative Exemption*

An exempt "administrative" employee is any employee:

> (1) Compensated on a salary or fee basis at a rate not less than $455 per week[16] . . . ;

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

### *(a)  Primary Duty of Management or Business Related Office Work*

Under the administrative exemption, an employee's "primary duty"[17] must consist of

performing office or nonmanual work directly related to the management and general business

operations of the employer.  29 C.F.R. § 541.200(a)(2).  Section 541.201(b) provides examples

of "[w]ork directly related to management or general business operations":

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

29 C.F.R. § 541.201(b).

---

[16] The parties do not dispute that plaintiffs satisfied the "salary basis" requirement of the executive and administrative exemptions. This memorandum opinion, therefore, will not discuss that element of the exemptions.

[17] See <u>supra</u>, Section IV.C.2.a, for a discussion of the term "primary duty."

In order for work to be "directly related to the management or general business operations," it must be "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." Id. § 541.201(a). The concept of a "production worker" is not limited to individuals involved in the manufacture of tangibles. Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 903-04 (3d Cir. 1991). For example, in Martin v. Cooper, the Court of Appeals for the Third Circuit held inside salespersons[18] of electrical products to be production, rather than administrative, employees. Id. at 903.

The administrative/production dichotomy turns on whether the services or goods provided by the employee constitute the marketplace offerings of the employer, or whether they contribute to the running of the business itself. Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1127 (9th Cir. 2002). Thus, context matters: an underwriter at a department store who decides whether to issue credit to consumers "performs a support function auxiliary to the department store's primary function of selling clothes"; whereas, an underwriter for a large bank "is directly engaged in creating the 'goods'—loans and other financial services—produced and sold by [the bank]." Davis v. J.P. Morgan Chase & Co., 587 F.3d 529, 535 (2d Cir. 2009). Courts distinguish exempt administrative employees from nonexempt production employees who perform administrative tasks by determining whether the employees are engaged in the "running of the business and not merely . . . the day-to-day carrying out of its affairs." Bratt v. Cnty. of Los Angeles, 912 F.2d 1066, 1070 (9th Cir. 1990).

---

[18] An "inside" salesperson is an employee who makes sales inside his or her place of business, which contrasts with the outside salesperson, exempt under the FLSA, who must be "customarily and regularly engaged away from the employer's place of business." 29 C.F.R. § 541.500.

ERAC-Chicago argues that Bajkowski was involved in many of the activities expressly identified in § 541.201(b), including finance, marketing, safety and health, personnel management and human resources.  (Mem. in Supp. of Def. Enterprise Leasing Co. of Chicago, LLC's Mot. for Summ. J. as to Pl. Robert Bajkowski ("ERAC-Chicago Br.") (ECF No. 254) at 26.)  Bajkowski argues that a reasonable jury could find that ERAC-Chicago failed to meet its burden of proof with regard to Bajkowski's primary duty.  (Pl.'s Resp. to Def. Enterprise Leasing Co. of Chicago, LLC's Mot. for Summ. J. as to Pl. Robert Bajkowski ("Bajkowski Brief") (ECF No. 326) at 27.)  Bajkowski argues that his office responsibilities were not sufficiently important to ERAC-Chicago and were merely the carrying on of its daily affairs.  (Id. at 27-28.)  He argues that his primary job duty was sales.

To the extent ERAC-Chicago points to specific administrative job duties performed by Bajkowski, there are material factual disputes about whether Bajkowski performed those duties and what the actual performance entailed.  For example, ERAC-Chicago argues that Bajkowski created "marketing-flex plans" for his employees, an arguably administrative task relating to marketing.  (ERAC-Chicago Br. (ECF No. 254) at 26.)  For the court to rely on that information, however, it would be required to make a credibility determination regarding Bajkowski's deposition testimony in which he testified that branch managers were in fact responsible for making those plans.  (Bajkowski Dep. (ECF No. 288-1) at 108-10.)  ERAC-Chicago points to testimony that Bajkowski was "particularly active in expanding his branches' business with the sizable Polish community in Chicago."  (ERAC-Chicago Br. (ECF No. 254) at 26.)  This argument is based, however, on testimony by Bajkowski's branch manager that Bajkowski "would often take the keys to a car and set off to get new business for the branch."  (Decl. of Andrew Mikkila (ECF No. 288-3) ¶ 10.)  For a variety of reasons, the court is not persuaded that

35

such actions, even if they were Bajkowski's primary duty, would qualify as administrative under the regulations.  First, making sales calls is not an office task, and driving a vehicle to a prospective customer is more akin to manual work, such as operating machinery.  Second, making sales calls and salesmanship (which are distinct from marketing) are not listed as examples of exempt areas of work in § 541.201(b).  Third, the regulations provide a separate exemption for outside sales employees, which ERAC-Chicago did not raise as an issue in this motion for summary judgment.

ERAC-Chicago presents several other arguably administrative duties—managing accounts receivable, making bank deposits, managing the rental car inventory, personnel management and human resources.  (ERAC-Chicago Br. (ECF No. 254) at 27-28.)  To entertain those arguments regarding personnel management, however, the court would be required to disregard the testimony of Bajkowski that he did not schedule, train, or discipline employees. The court also concludes there are genuine disputes of material fact regarding whether Bajkowski managed the rental car inventory, as he testified that his branch manager was ultimately responsible for making final decisions.

More importantly, there is insufficient evidence to determine as a matter of law that the arguably administrative tasks performed by Bajkowski constituted his "primary duty."  It is not the province of this court on a motion for summary judgment to determine which witness to credit and which to discredit, and the court cannot disregard the testimony of Bajkowski that his primary responsibility in terms of time spent was writing tickets, washing cars and renting cars. He testified that he spent sixty percent of his time performing these tasks.  Inside sales tasks and physical tasks are not within the ambit of the administrative exemption. Martin v. Cooper, 940 F.2d at 903-06.  Inside salespeople may be production employees.  Id.  ERAC-Chicago did not

meet its burden of proving that Bajkowski's primary duty was management– or business-related office or nonmanual work.

### (b)  Discretion and Independent Judgment and Matters of Significance

To fall within the administrative exemption, an employee must "exercise . . . discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3). The regulations consider the exercise of discretion and independent judgment to involve evaluation of options and subsequent decisionmaking.  Id. § 541.202(a).  Courts should determine whether an employee exercises discretion and independent judgment "in . . . light of all the facts involved in the particular employment situation in which the question arises."  Id. § 541.202(b).  When determining whether an employee exercises discretion and independent judgment with respect to matters of significance, courts should consider the following nonexhaustive list of factors:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Id.

The FLSA "discretion and independent judgment" requirement can be satisfied even if the employee's decisions are reviewed or changed by a superior.  "[T]he term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review," but the employee's decisions "may consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.202(c).  For that reason, "[t]he fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."  Id.  Employees can exercise discretion and independent judgment even when their recommendations are subject to review. Id.; accord Paul v. UPMC Health Sys., No. 09-1565, 2009 WL 699943, at *12 (W.D. Pa. Mar. 10, 2009).   Carrying out clerical duties, on the other hand, is not sufficient for administrative exemption, even if the duties involve a small amount of discretion.  See Goldstein v. Dabanian, 291 F.2d 208, 210-11 (3d Cir. 1961) (holding that employees, whose duties included cashing checks, accepting payments and issuing money orders, were not within the administrative exemption).

Here, ERAC-Chicago argues that Bajkowski "performs 'work that affects business operations to a substantial degree.'"  (ERAC-Chicago Br. (ECF No. 254) at 28 (quoting 29 C.F.R. § 541.202(b)).)  They argue that his involvement in managing accounts receivable, developing relationships with customers, managing cash assets, training and managing employees, and developing and implementing marketing plans required the exercise of independent judgment and discretion.  (Id. at 29-30)  ERAC-Chicago argues that Bajkowski's discretion is reinforced by his having often been the most senior employee on site at his branch. (Id.)  Bajkowski argues that the discretion he exercised was no greater than the discretion

38

exercised by nonexempt employees at ERAC-Chicago and did not affect "matters of significance."  (Bajkowski Br. (ECF No. 326) at 30.)  Many of the facts relied upon by ERAC-Chicago in arguing that Bajkowski performs "work that affects business operations to a substantial degree" are disputed by Bajkowski's deposition testimony.   For example, Bajkowski testified that his involvement in managing accounts receivable—by following up on debts owed to the branch by their larger accounts—was shared with management trainees and management assistants.  (Bajkowski Dep. (ECF No. 288-1) at 12-13.)

Resolving factual doubts in favor of Bajkowski's testimony, the court finds that a reasonable jury could conclude that none of the enumerated factors listed in 29 C.F.R. § 541.200(a)(3) are satisfied in this case.   At the summary judgment stage, the court cannot discredit Bajkowski's testimony that the majority of his time was spent performing menial tasks, that his branch manager and area manager were ultimately responsible for the operation of the branch, and that he did not believe he had much independent authority to make decisions (excluding the four months when his branch manager was on sick leave).  In light of that testimony, there are material facts in genuine dispute regarding both Bajkowski's independence and his discretion.

For the reasons stated above, the court finds that there are genuine disputes with respect to material facts in two of the three § 541.200(a) elements of the administrative exemption. Because ERAC-Chicago has the burden of proving each element of the exemption, these genuine disputes preclude summary judgment on the basis of the administrative exemption.

### 4.  The Combination Exemption

Under the FLSA regulations, an employee who performs a combination of exempt duties—but who does not satisfy the primary duty requirement under any of the stand-alone

exemptions—may nonetheless qualify for exempt status.  29 C.F.R. § 541.708.  "[A]n employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption" so long as the other requirements, such as the salary basis test, are met.  Id.; accord IntraComm, Inc. v. Baja, 492 F.3d 285, 292-95 (4th Cir. 2007) (deferring to the Secretary of Labor's interpretation that "the combination exemption provides a mechanism for cobbling together different exempt duties for the purposes of meeting the primary-duty test" but "does not . . . relieve employers of their burden to independently establish the other requirements of each exemption whose duties are combined").  The primary thrust of the combination exemption, therefore, is merely that the performance of exempt executive work cannot be the basis for preventing an otherwise exempt administrative employee from being exempted because his primary duty is blended between executive and administrative work and vice versa.  Id.

Bajkowski's testimony that he spent sixty percent of his time writing tickets, washing cars, and renting cars precludes summary judgment based on the combination exemption.  As was explained above, a reasonable jury, giving credence to Bajkowski's testimony, could conclude that these activities would not fall within either the executive or administrative exemption.  Thus, a reasonable jury could conclude that Bajkowski's most important and critical job responsibility, and the responsibility on which he spent the majority of his time, did not involve any exempt work (as opposed to ERAC-Chicago's contention that it involved a combination of exempt work).  Conclusively, because ERAC-Chicago did not meet its burden with respect to other necessary elements of both the administrative and the executive exemptions—beyond merely failing to establish the primary duty element—the combination exemption is inapplicable to Bajkowski.  See IntraComm, Inc. 492 F.3d at 292-95.   Thus, the

court cannot grant ERAC-Chicago's motion for summary judgment on the basis of the combination exemption.

### *V. Conclusion*

For the reasons set forth in this memorandum opinion, because ERAC-Chicago did not as a matter of law prove *all* the elements of at least one of the exemptions, and in consideration of the relevant summary judgment standard and the narrowly construed FLSA exemptions, ERAC-Chicago's motion for summary judgment against sample plaintiff Robert Bajkowski (ECF No. 253) will be denied.  Summary judgment is precluded by the abundance of disputed material facts regarding Bajkowski's job responsibilities, on which the court must defer to future resolution by a jury.  An order will follow.

By the court,


  /s/ Joy Flowers Conti
Hon. Joy Flowers Conti
United States District Judge


Date:  July 19, 2012