# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICKOLAS HICKTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ENTERPRISE RENT-A-CAR COMPANY, *et al.*,<br><br>Defendants. | Nos.   2:09-mc-00210-JFC<br>2:07-cv-01687<br>2:09-cv-00815<br>2:09-cv-00816<br>2:09-cv-00824<br>2:09-cv-00832<br>2:09-cv-00833<br>2:09-cv-01188<br>2:09-cv-01321<br>2:10-cv-01003<br>2:10-cv-01189<br>2:10-cv-01456<br>2:11-cv-00071<br>2:11-cv-00333<br>2:11-cv-01024<br>2:12-cv-00659 |
| | Judge Joy Flowers Conti |
| **THIS DOCUMENT RELATES TO:**<br><br>*All Actions* | *Electronically Filed* |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASSES, <u>AND APPROVAL OF SETTLEMENT NOTICES</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  PRELIMINARY STATEMENT ................................................................................. 2

III.  FACTUAL AND PROCEDURAL BACKGROUND ................................................. 5

    A.  Status of This Litigation ................................................................................... 5

    B.  The Settlement Agreement ............................................................................... 7

        1.  The Proposed Settlement Classes ........................................................ 8

        2.  The Proposed Settlement Notices ........................................................ 9

        3.  Monetary Terms ................................................................................... 9

        4.  Dismissal and Release of Claims ...................................................... 11

        5.  Agreements Regarding Assignment of Exempt Assistant Branch
            Managers .......................................................................................... 12

IV.  ARGUMENT ............................................................................................................ 12

    A.  The Settlement Agreement Should Be Preliminarily Approved By The
        Court ............................................................................................................... 12

        1.  Standards for Preliminary Approval .................................................. 13

    B.  The Proposed Settlement Classes Satisfy The Requirements for
        Certification ................................................................................................... 16

        1.  Numerosity ........................................................................................ 17

        2.  Commonality ...................................................................................... 18

        3.  Typicality .......................................................................................... 18

        4.  Adequacy ........................................................................................... 19

        5.  Predominance and Superiority ........................................................... 19

        6.  The Collective Action Class .............................................................. 20

    C.  The Proposed Settlement Notices Should Be Approved By the Court ............ 21

        1.  The Proposed Methods of Providing Notice Meet The
            Requirements For Approval ............................................................... 21

2.     The Proposed Content of the Settlement Notice Meets the Requirements For Approval ................................................................... 23

D.     The Court Should Schedule a Final Approval Hearing ....................................... 24

V.     CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................................17, 19

*Averill v. Enterprise Rent-A-Car Co.,*
    No. 08-cv-4191 (N.D. Ill.) ...............................................................................................6

*Barnes v. American Tobacco Co.,*
    161 F.3d 127 (3d Cir. 1998)...........................................................................................17

*Beck v. Maximus, Inc.,*
    457 F.3d 291 (3d Cir. 2006)...........................................................................................19

*Bromfield v. Enterprise Rent-A-Car Co.,*
    No. 09-cv-2403 (S.D.N.Y.).................................................................................................6

*In re Cigna Corp. Secs. Litig.,*
    No. 02-cv-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) .............................................14

*In re Cmty. Bank of N. Virginia & Guar. Bank Second Mortg. Litig.,*
    MDL 1674, 2008 WL 239650 (W.D. Pa. Jan. 25, 2008)....................................................14, 15

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013)....................................................................................................20

*Cullen v. Whitman Med. Corp.,*
    197 F.R.D. 136 (E.D. Pa. 2000).......................................................................................15

*DePina v. Enterprise Leasing Co. of Orlando,*
    No. 09-cv-359 (M.D. Fla.).................................................................................................6

*Douty v. Enterprise Holdings, Inc.,*
    No. 10-cv-2660 (D. Md.)...................................................................................................6

*Espenscheid v. DirectSat USA, LLC,*
    705 F.3d 770 (7th Cir. 2013) ...........................................................................................20

*Galia v. Enterprise Rent-A-Car Co.,*
    No. 09-cv-1504 (N.D. Ill.).................................................................................................6

*Gaudelli v. Enterprise Rent-A-Car Co. of Tennessee,*
    No. 09-cv-580 (N.D. Ga.).................................................................................................6

*Gen. Tel. Co. of Southwest v. Falcon,*
    457 U.S. 147 (1982)........................................................................................................18

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)..................................................................................12, 13, 14

*Graham v. Enterprise Leasing Co.*,
  No. 07-cv-23372 (S.D. Fla.) ...............................................................................6

*Grunewald v. Kasperbauer*,
  235 F.R.D. 599 (E.D. Pa. 2006)..........................................................................21

*Hagler v. Enterprise Leasing Co.–South Central, Inc.*,
  No. 09-cv-00910 (N.D. Ala.) ..............................................................................6

*Hanlon v. Palace Entm't Holdings, LLC*,
  No. 11-cv-987, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) ..................................13, 14

*Hardy v. Enterprise Holdings, Inc.*,
  No. 10-cv-0953 (D. Or.) ......................................................................................6

*Hickton v. Enterprise Rent-A-Car Co.*,
  No. 2:07-cv-01687-JFC (W.D. Pa.) .....................................................................6

*Hickton v. Enterprise Rent-A-Car Company*,
  No. 2:09-mc-00210-JFC (W.D. Pa. 2009) ..........................................................2

*Hoffman Elec., Inc. v. Emerson Elec. Co.*,
  800 F. Supp. 1279 (W.D. Pa. 1992).....................................................................15

*In re Inter-Op Prosthesis Liab. Litig.*,
  204 F.R.D. 359 (N.D. Ohio 2001) .......................................................................15

*Jones v. Commerce Bankcorp., Inc.*,
  No. 05-cv-5600, 2007 WL 2085357 (D.N.J. July 16, 2007) ...............................13, 18

*Kelly v. Enterprise Holdings, Inc.*,
  No. 12-cv-2288 (W.D. Tenn.)..............................................................................6

*Lamothe v. Enterprise Holdings, Inc.*,
  No. 11-cv-609 (E.D. Va.).....................................................................................6

*Meijer, Inc. v. 3M*,
  No. 04-cv-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ..........................23, 24

*Modiri v. Enterprise Holdings, Inc.*,
  No. 10-cv-2239 (D. Nev.) ....................................................................................6

*O'Brien v. Brain Research Labs, LLC*,
  No. 12-cv-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) ..................................20

*Parks v. Portnoff Law Assocs.*,
  243 F. Supp. 2d 244 (E.D. Pa. 2003) ...................................................................12

*Protective Comm. for Indep. Shareholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) .............................................................................................13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ........................................................................ passim

*In re Sch. Asbestos Litig.*,
  921 F.2d 1330 (3d Cir. 1990) ...............................................................................13

*Schieser v. Enterprise Holdings, Inc.*,
  No. 11-cv-114 (D. Ariz.) .........................................................................................6

*Spellman v. American Eagle Express, Inc.*,
  No. 10-1764, 2013 WL 1010444 (E.D. Pa. Mar. 13, 2013) .................................15

*Steen v. Enterprise Holdings, Inc.*,
  No. 10-cv-126 (E.D. N.C.) .......................................................................................6

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) .................................................................................17

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ...............................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .........................................................................................18

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...........................................................................13, 18

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910) .............................................................................................12

*Zabady v. Enterprise Leasing Company*,
  No. 4:07-cv-00494-SNLJ (E.D. Mo.) ......................................................................5

*Zabady v. Enterprise Rent-A-Car Co.*,
  No. 4:07-cv-00494 (E.D. Mo. July 17, 2008) ..........................................................5

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
  758 F.2d 86 (3d Cir. 1985) ..............................................................................21, 23

*Zinberg v. Washington Bancorp, Inc.*,
  138 F.R.D. 397 (D.N.J. 1990) ...............................................................................17

**FEDERAL STATUTES**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") ............................................. passim

28 U.S.C. § 1715(d) ....................................................................................................................25

**RULES**

Rule 23 of the Federal Rules of Civil Procedure ................................................................. passim

**CONSTITUTIONAL PROVISIONS**

Fifth Amendment .......................................................................................................................22

**OTHER AUTHORITIES**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §§ 8.21, 8.39 (Fourth 2002)........24

Manual for Complex Litigation §§ 21.311-21.31221.632 (4th ed. 2011) ..............................13, 24

## I.      INTRODUCTION

Plaintiffs in the above-captioned actions and the Enterprise Groups[1] (collectively, the "Settling Parties") respectfully submit this Memorandum of Law in support of their Joint Motion for Preliminary Approval of Settlement, Certification of Settlement Classes, and Approval of Settlement Notices.

By the instant Motion, the Settling Parties request that the Court (i) enter the Preliminary Approval Order approving the terms of the Stipulation and Settlement Agreement ("Agreement")[2] as fair, reasonable and adequate and in the best interests of the Named Plaintiffs and the members of the Plaintiff Classes; (ii) certify the Plaintiff Classes (as defined herein) for Settlement purposes only; (iii) approve the Allocation Formula for the Settlement Payments; (iv) approve the Federal/State Settlement Class Notice and Opt-In Plaintiff Notice; (v) approve the Claim and Consent to Join Settlement Form, and the Election to Opt Out Form; (vi) authorize the mailing of the Notices, Claim and Consent to Join Settlement Form, and Election to Opt Out Form to the respective Members of the Plaintiff Classes; (vii) appoint Class Counsel as counsel for the Plaintiff Classes; (viii) appoint A.B. Data Ltd. as the Claims Administrator; (ix) set the Notice Response Deadline; and (x) schedule a hearing for the final approval of the Settlement .

---

[1]   The Enterprise Groups include the following named Defendants in the above-captioned actions:  Enterprise Rent-A-Car Company of Pittsburgh LLC; ELRAC, LLC; Enterprise Leasing Company-South Central, LLC; Enterprise Leasing Company of Florida, LLC; Enterprise Leasing Company of Chicago, LLC; Enterprise Leasing Company of Georgia, LLC; Enterprise Rent-A-Car Company-Midwest, LLC; Enterprise Leasing Company of Orlando, LLC; Enterprise Leasing Company of Philadelphia, LLC; Enterprise Leasing Company-Southeast, LLC; EAN Holdings LLC; Enterprise RAC Company of Maryland, LLC; Enterprise Leasing Company-West, LLC; Enterprise Leasing Company of Phoenix, LLC; Enterprise Leasing Co. of Norfolk/Richmond, LLC; and Enterprise Leasing Company of Tennessee.  The Enterprise Groups also include any other operating subsidiaries of Enterprise Holdings, Inc., that voluntarily decide to participate in the Proposed Settlement Agreement, pursuant to the procedures described on p. 8 *infra*.

[2]   All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Agreement unless otherwise defined.

## II.    PRELIMINARY STATEMENT

The current Settlement is the culmination of more than six years of litigation in which Plaintiffs challenged the Enterprise Group's alleged misclassification  of its Assistant Branch Managers as exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and applicable state wage-and-hour laws.  The Settlement, if approved, would resolve the claims in at least fifteen lawsuits against the Enterprise Groups which have been coordinated for pre-trial proceedings before this Court pursuant to an order by the United States Judicial Panel on Multidistrict Litigation.  *See generally Hickton v. Enterprise Rent-A-Car Company,* No. 2:09-mc-00210-JFC (W.D. Pa. 2009) (the multidistrict docket established for this litigation).[3]

Prior to reaching an agreement on the terms of the Settlement, the Settling Parties engaged in extensive discovery and motion practice in the Enterprise Cases.   Among other things, the Settling Parties exchanged more than 135,000 pages of documents, conducted over twenty depositions, served and responded to multiple sets of requests for production of documents, interrogatories and requests for admissions and obtained discovery from multiple third-parties.  In addition,  the Settling Parties engaged in extensive motion practice, including with respect to transferring and/or staying the action, personal jurisdiction, conditional collective certification and summary judgment.

Discovery revealed substantial evidence supporting the Enterprise Groups' decisions to classify their Assistant Branch Managers as exempt under the Executive, Administrative, and/or Combination exemptions to the overtime provisions of the FLSA, and analogous exemptions under applicable state wage-and-hour laws.  Based on the strength of the Enterprise Groups'

---

[3]  These cases, along with any cases initiated pursuant to the procedures described on p. 8, *infra*, shall be collectively referred to as the Enterprise Cases.  All references to docket entries (denoted as "ECF No. __ ") shall refer to the master docket, No. 2:09-mc-00210-JFC.

asserted defenses and the substantial evidence in the record that Assistant Branch Managers perform exempt duties, the lack of joint employer status as determined by this Court and affirmed by the United States Court of Appeals for the Third Circuit, the difficulty of obtaining class certifications and of defeating motions to decertify the conditionally certified classes, the cost, length and difficulty of this litigation, the uncertainty of the outcome of the Enterprise Cases, and the significant additional expense and delay associated with continued litigation, including, but not limited to, the discovery ordered to take place by this Court on December 4, 2012 (ECF No. 885) in preparation for motions relating to decertification of the collective certification of the FLSA classes and certification of Rule 23 state-law classes, and discovery as to whether any of the Named Plaintiffs or other Assistant Branch Managers who may choose to participate in the Enterprise Cases are exempt, Class Counsel (defined herein) believe that settlement with the Enterprise Groups on the terms set forth in the Stipulation and Settlement Agreement ("Agreement") (attached as Exhibit A to the Declaration of Peter A. Muhic, Esq. ("Muhic Decl.") is fair, reasonable and adequate, and in the best interests of the Named Plaintiffs and the members of the Plaintiff Classes.

Throughout this Litigation, the Enterprise Groups have denied all liability or wrongdoing with respect to the allegations or claims raised in the Enterprise Cases (and continue to do so). However, to avoid the costs of continued litigation and in consideration for the dismissal of all pending claims raised by the Named Plaintiffs and members of the Plaintiff Classes, as well as general releases by the Named Plaintiffs and Sample Plaintiffs and other consideration described herein, the Enterprise Groups have agreed to settle all outstanding claims raised in the Enterprise Cases.  In addition, the Enterprise Groups agree that as part of the Settlement they will use their best efforts to assign Assistant Branch Managers to branches at which they will customarily and

regularly direct the work of at least two or more full-time employees or their equivalent, or when not feasible, to branches at which their primary duty will consist of office or non-manual work directly related to management or general business operations, outside sales, or other combination of exempt duties, in accordance with the FLSA and other applicable wage and hour laws.

The Settlement was the product of extensive negotiations between the Settling Parties over the course of this lengthy multidistrict litigation, including three full-day mediations conducted before experienced mediator Mark S. Rudy; multiple telephonic conversations between the Settling Parties and the mediator; and numerous status conferences with the Court. The Settlement will benefit all members of the Plaintiff Classes.

As explained herein, all prerequisites for preliminary approval of the Settlement, certification of a class and collective action for settlement purposes only, approval of the proposed plan of allocation of the Settlement Amount, and approval of the Notices have been met.  Preliminary approval of the Settlement and dissemination of the Class Notices is therefore warranted.   Accordingly, the Settling Parties respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) certify, for settlement purposes only, all state law claims that were or that could have been asserted in the Litigation pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and conditionally certify all federal FLSA claims asserted in the litigation pursuant to 29 U.S.C. § 216(b); (3) appoint, for settlement purposes only, Plaintiffs Nickolas Hickton, Sean Herbster, Miquel McDonald, Michael Keith Averill, Jr., Jasmine Bromfield, Nils Hagstrom, Elsa DePina, Jeffrey Galia, Robert Bajkowski, Tori Gaudelli, Donnashekia Richard, Wayman F. Graham, II, Michael Douty, Michelle Mitchell Steen, Spencer Hardy, Kevin C. Hagler, Shawn Modiri, Robert Schieser, Brandy Peery, Steven Lamothe, and Bobby Kelley as

representatives of their respective Classes; (4) appoint, for settlement purposes only, the law firms of Kessler Topaz Meltzer & Check, LLP, Shavitz Law Group, PA, and Schreiber & Petro, P.C. as Class Counsel; (5) approve AB Data, Ltd. as the Claims Administrator; (6) preliminarily approve the allocation of the Settlement Amount presented herein and incorporated in the proposed Notices; (7) approve and authorize the mailing of the Class Notices; and (8) set a date for a Final Approval Hearing.

## III.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Status of This Litigation

On December 11, 2007, Nickolas Hickton, an Assistant Branch Manager employed by Enterprise Rent-A-Car Company of Pittsburgh, filed the first of these class and collective action lawsuits against his employer, Enterprise Leasing Company of Pittsburgh, LLC, under the FLSA and Pennsylvania state wage-and-hour law, in the United States District Court for the Western District of Pennsylvania.   Mr. Hickton alleged that he and other similarly situated Assistant Branch Managers were improperly classified as exempt and denied overtime compensation to which they were entitled to for work performed in excess of 40 hours in a work week.[4]

Thereafter, employees of several other operating subsidiaries of Enterprise Holdings, Inc. (the parent company of Enterprise Leasing Company of Pittsburgh, LLC) brought similar lawsuits against those subsidiaries, alleging violations of the FLSA and, in certain cases, state

---

[4]   An earlier lawsuit had been filed in 2006 in the Eastern District of Louisiana, and later transferred to the Eastern District of Missouri.   *See Zabady v. Enterprise Leasing Company,* No. 4:07-cv-00494-SNLJ (E.D. Mo.).   After two years of litigation, the lead plaintiff in *Zabady* voluntarily dismissed any and all collective action allegations and claims against the defendant in that case based on "the discovery done to date" and a "survey and expert witness report" produced by the defendant.   *See* Unopposed Motion to Voluntarily Dismiss Collective Action Claims, *Zabady v. Enterprise Rent-A-Car Co.,* No. 4:07-cv-00494 (E.D. Mo. July 17, 2008) (ECF No. 98).

wage-and-hour law.[5]   Those lawsuits were coordinated for pre-trial proceedings in this Court

pursuant to an order by the United States Judicial Panel on Multidistrict Litigation.   *See Hickton*

*v. Enterprise Rent-A-Car Co.,* No. 2:07-cv-01687-JFC (W.D. Pa.) (ECF No. 132).

In the four years since these cases were coordinated, the Settling Parties have engaged in

extensive discovery (over 135,000 pages exchanged and over twenty depositions conducted) and

motion practice in the Enterprise Cases (with nearly 900 docket entries filed in the master

docket).   The substantive motions filed by the Settling Parties include whether the Court had

personal jurisdiction over the Enterprise Groups' parent company, Enterprise Holdings, Inc.

("EHI"), and whether summary judgment should be granted for EHI on the question of whether

it was a joint employer—together with the Enterprise Groups—of Plaintiffs.   The Court

subsequently granted summary judgment and dismissed all claims against EHI with prejudice, a

decision that was affirmed by the U.S. Court of Appeals for the Third Circuit.   In addition,

Plaintiffs moved for (and the Court granted) conditional certification of Plaintiffs' FLSA claims,

and the Enterprise Groups moved for (and the Court denied) summary judgment on the FLSA

claims of eight (8) sample Plaintiffs.   The discovery and motion practice revealed not only

substantial evidence supporting the Enterprise Groups' decisions to classify their Assistant

Branch Managers as exempt under the Executive, Administrative, and/or Combination

---

[5]   The lawsuits include *Graham v. Enterprise Leasing Co.*, No. 07-cv-23372 (S.D. Fla.); *Averill v. Enterprise Rent-A-Car Co.*, No. 08-cv-4191 (N.D. Ill.); *DePina v. Enterprise Leasing Co. of Orlando*, No. 09-cv-359 (M.D. Fla.); *Gaudelli v. Enterprise Rent-A-Car Co. of Tennessee*, No. 09-cv-580 (N.D. Ga.); *Hagler v. Enterprise Leasing Co.–South Central, Inc.*, No. 09-cv-00910 (N.D. Ala.); *Galia v. Enterprise Rent-A-Car Co.*, No. 09-cv-1504 (N.D. Ill.); *Bromfield v. Enterprise Rent-A-Car Co.*, No. 09-cv-2403 (S.D.N.Y.); *Steen v. Enterprise Holdings, Inc.,* No. 10-cv-126 (E.D. N.C.); *Hardy v. Enterprise Holdings, Inc.,* No. 10-cv-0953 (D. Or.); *Modiri v. Enterprise Holdings, Inc.,* No. 10-cv-2239 (D. Nev.); *Douty v. Enterprise Holdings, Inc.,* No. 10-cv-2660, (D. Md.); *Lamothe v. Enterprise Holdings, Inc.,* No. 11-cv-609 (E.D. Va.); *Schieser v. Enterprise Holdings, Inc.,* No. 11-cv-114 (D. Ariz.); and *Kelly v. Enterprise Holdings, Inc.,* No. 12-cv-2288 (W.D. Tenn.).

exemptions to the overtime provisions of the FLSA, and analogous exemptions under applicable state wage-and-hour laws, but also the significant risks and challenges that the Settling Parties bear with respect to continuing this litigation.

Prior to engaging in the recent settlement negotiations, the Settling Parties entered into, and this Court approved, a joint discovery plan that would have entailed additional, extensive written discovery and depositions in these cases going forward, involving several different Enterprise Groups and numerous sample Plaintiffs, in preparation for motions practice relating to decertification of FLSA classes; class certification of Rule 23 state-law classes; and the Enterprise Groups' good-faith defenses to any claims for liquidated damages. *See* ECF No. 885. In addition, the discovery would ultimately have been used to determine whether any of the Enterprise Groups improperly classified their Assistant Branch Managers as exempt. Therefore, due in part to the expense and uncertainty of continued, protracted litigation, the Settling Parties believe that it is in the best interests of the Named Plaintiffs, members of the Settlement Classes, and the Enterprise Groups, to settle all claims alleged in the Enterprise Cases, pursuant to the terms described further below.

### B.      The Settlement Agreement

The Agreement is the product of extensive negotiations between the Settling Parties over the course of this Litigation, including multiple full-day mediations conducted before veteran mediator Mark S. Rudy, an attorney with twenty-five years' experience mediating employment and business-related disputes totaling 3,500 matters. The key components of the Settlement are summarized below, and a complete description of the terms and conditions of the Settlement are contained in the Agreement

### 1.      The Proposed Settlement Classes

The Agreement covers two types of Settlement Classes:   (1) the Federal Settlement Classes; and (2) the State Settlement Classes.

The Federal Settlement Classes include all current and former employees of each Enterprise Group who work, or have worked, as an Assistant Branch Manager at any time within the applicable Statute of Limitations period(s), with the exception of individuals employed as Assistant Branch Managers in the State of California.[6]   Because the parent corporation of the Enterprise Groups, EHI, has been dismissed from this Litigation, employees who work(ed) for each Enterprise Group shall constitute a distinct Federal Settlement Class.

Apart from the Enterprise Groups that are currently defendants in the above-captioned actions, other operating subsidiaries of EHI will be provided with the opportunity to participate in this Settlement as "Settlement Groups."[7]   Following preliminary approval of the Agreement, any operating subsidiary that consents to participate in this Settlement shall send notice to its employees of the pendency of the Settlement.   If one or more of the employees of these other operating subsidiaries returns a Claim Form indicating his or her intent to participate in this Settlement, Class Counsel shall identify a suitable employee of the operating subsidiary to serve as a Named Plaintiff, and then amend the Amended Master Complaint to include the Settlement Group Representative(s) and all others similarly situated, naming the Settlement Group(s) as defendant(s) in the Litigation.   The Second Amended Master Complaint shall limit the claims of the Settlement Group(s) to those claims involving Assistant Branch Managers seeking recovery of overtime pursuant to the FLSA.

---

[6]   The Statute of Limitations periods that apply to each of the Enterprise Groups are listed in the Agreement in Section I.B.

[7]   A list of operating subsidiaries that will be invited to participate in the Settlement is contained as Exhibit 4 to the Agreement.

The State Settlement Classes, meanwhile, shall include all current and former employees of the Enterprise Groups <u>only</u> who have worked as an Assistant Branch Manager at any time within the applicable Statute of Limitations period(s), and who were employed at any time during the applicable Statute of Limitations period(s) in one or more of the following states: Illinois, Maryland, Nevada, New York, Oregon, and Pennsylvania.  Each state's employees shall constitute a separate State Settlement Class (*e.g.*, a New York Class, a Pennsylvania Class, etc.).

### 2.        The Proposed Settlement Notices

The Agreement provides for the dissemination of two Class Notices.  The first—the Opt-In Plaintiff Settlement Notice—will be sent to individuals who have previously consented to sue one of the Enterprise Groups and who have already joined the Litigation.  The second—the Federal/State Settlement Class Notice—will be sent to individuals who have not previously joined the Litigation and who work, or worked, for one of the Enterprise Groups during the applicable Statute of Limitations period(s).  Individuals in the latter group will also receive a "Claim and Consent to Join Settlement Form" (providing them with an opportunity to join the Litigation), as well as an "Election to Opt-Out Form" (providing them with an opportunity to opt-out of a State Settlement Class).[8]

All Class Members will receive Notice.

### 3.        Monetary Terms

The proposed "Settlement Fund" has a value of Seven Million, Seven Hundred and Fifty

---

[8]   Copies of the proposed Notices, Claim and Consent to Join Form and Election to Opt-Out Form are attached Class members who have already filed a consent form to join one of the Enterprise Cases shall be bound by the terms of the Agreement unless they decide to opt-out.  If such individuals do not opt-out, an attempt will be made to deliver any payment owed to such individuals by using their Last Known Address.

Thousand Dollars and Zero Cents ($7,750,000.00). The Claims Administrator[9] shall make deductions from the Settlement Fund for attorneys' fees and costs, administrative costs, applicable taxes, and, if approved by the Court, Enhancement Payments for the Named Plaintiffs, Sample Plaintiffs and Opt-In Plaintiffs (as described below).[10] The amount remaining after these deductions (the "Net Settlement Amount") shall be distributed to members of the Plaintiff Classes who choose to participate in the Settlement in accordance with the "Allocation Formula" set out in the Agreement.

Pursuant to the Allocation Formula, the Net Settlement Amount will be divided by the total number of "Compensable Work Weeks" worked by the Participating Claimants, resulting in the "Gross Workweek Amount". For each Participating Claimant, the Gross Workweek Amount will be multiplied by the number of Compensable Work Weeks in which he or she worked as an Assistant Branch Manager for one or more of the Enterprise Groups, during the applicable Statute of Limitations period(s) (resulting in an "Individual Overtime Payment"). The payment for each Settlement Class member shall consist of his or her Individual Overtime Payment, plus any applicable enhancement payment (if approved by the Court).

In accordance with the Agreement, Class Counsel will seek the Court's approval for payment of certain "Enhancement Payments" to the Named Plaintiffs, Sample Plaintiffs and Opt-In Plaintiffs (individuals who previously consented to sue one of the Enterprise Groups and who have joined the Litigation), in recognition of the risks and benefits of their participation and the substantial services they performed. These Enhancement Payments shall be in addition to the distributions they receive from the Settlement Fund, as described above, and shall not be

---

[9]  The designated "Claims Administrator" is A.B. Data, Ltd.

[10]  Class Counsel agrees to file a separate motion for approval of attorneys' fees and costs, and represents and agrees not to seek more than 33⅓% of the Settlement Fund ($2,583,333.33).

opposed by Defendants.   The Claims Administrator will make all legally mandated payroll deductions prior to distributing the Settlement Payment to each participating Class Member.

### 4.    Dismissal and Release of Claims

In exchange for the Settlement Payments, all participating members in the Federal Settlement Classes shall agree to release the Enterprise Groups and all other Released Parties[11] from any and all claims related to compensation allegedly owed to them in connection with their employment in the Enterprise Groups.[12]   In addition, in exchange for the Enhancement Payments, the Named Plaintiffs and Sample Plaintiffs will agree to a general release of all claims against the Enterprise Groups, whether or not related to overtime compensation.   The Named Plaintiffs further agree that they will stipulate to the voluntary dismissal with prejudice of the Enterprise Cases.

Members of the State Settlement Classes will be offered the opportunity to file a Claim Form, participate in the Federal Settlement Classes, and receive a Settlement Payment.   If such individuals do not file a Claim Form, they will nevertheless be deemed to have released the Enterprise Groups from any and all claims related to state wage-and-hour law, unless they

---

[11]  "Released Parties" include the Enterprise Groups and their past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys and each of their company-sponsored employee benefit plans and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents.

[12]  The "Released Claims" shall mean all known or unknown claims, demands, rights, liabilities, and causes of action arising out of, relating to, or in connection with compensation for any work performed for Defendants during the applicable class period(s).  The Released Claims include, but are not limited to, claims for overtime, travel time, unreported time, reported time, and the claims asserted or which could have been asserted in the Enterprise Cases, as well as any other alleged violations of the Fair Labor Standards Act and any other federal, state, local or other wage and hour requirements, including, without limitation, claims for economic damages, non-economic damages, restitution, penalties, liquidated damages, interest, or attorneys' fees and costs.

affirmatively exclude themselves (or "opt out") of the Settlement.   Members of the State Settlement Classes who do not file a Claim Form will not, however, release any federal FLSA claims that they may have against the Enterprise Groups.

>    **5.    Agreements Regarding Assignment of Exempt Assistant Branch Managers**

As part of the Agreement, the Enterprise Groups agree to use their best efforts to assign exempt Assistant Branch Managers to branches at which they will customarily and regularly direct the work of at least two or more full-time employees or their equivalent, or when such assignment is not feasible, to branches at which their primary duty will consist of office or non-manual work directly related to management or general business operations, outside sales, or other combination of exempt duties, in accordance with the FLSA and applicable wage and hour laws.   The Enterprise Groups intend to continue classifying their Assistant Branch Managers as exempt, based on the important managerial and administrative tasks performed by those employees and the substantial evidence supporting such an exemption in the record in the Enterprise Cases.

## IV.   ARGUMENT

### A.   The Settlement Agreement Should Be Preliminarily Approved By The Court

"Compromises of disputed claims are favored by the courts."   *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998).   Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.   This is particularly true "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."   *Parks v. Portnoff Law Assocs.*, 243 F. Supp. 2d 244, 249 (E.D. Pa. 2003) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55

F.3d 768, 784 (3d Cir. 1995)); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (the court "encourage[s] settlement of complex litigation 'that otherwise could linger for years'"). The Proposed Settlement Agreement here meets all the requirements for preliminary approval by the Court.

### 1. Standards for Preliminary Approval

Federal Rule of Civil Procedure 23(e) grants the Court discretion to approve any settlement of a class action. Indeed, in a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *In re GMC*, 55 F.3d at 785. The ultimate determination whether a proposed class action settlement warrants approval, therefore, resides in the Court's discretion. *See Protective Comm. for Indep. Shareholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).

"Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Jones v. Commerce Bankcorp., Inc.*, No. 05-cv-5600, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). At the preliminary approval phase, the "court must only 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.'" *Hanlon v. Palace Entm't Holdings, LLC*, No. 11-cv-987, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012) (quoting Manual for Complex Litigation (Fourth), § 21.632 (2011)).

The Third Circuit has adopted the following four-factor test to determine the preliminary fairness of a class action settlement:

> (a)      the negotiations occurred at arm's length;

        (b)      there was sufficient discovery;

        (c)      the proponents of the settlement are experienced in similar litigation; and

        (d)      only a small fraction of the class objected.

*In re GMC*, 55 F.3d at 785.  The Settlement meets all these factors.

The Settlement resulted from extensive negotiations, including multiple full-day mediations facilitated by an experienced mediator, multiple telephonic conversations between the parties and the mediator, and numerous status conferences with the Court.  Plaintiffs were represented in the settlement negotiations by a team of attorneys who have had considerable experience in prosecuting wage and hour claims in both federal and state court, and are therefore well versed in the issues.  The Enterprise Groups were similarly represented by skilled counsel experienced in collective and class wage and hour litigation.  Because of the lengthy and involved litigation, counsel for the Settling Parties were able to thoroughly assess the strengths and weaknesses of the Litigation and craft the Agreement accordingly.  These factors amply demonstrate that the Settlement was the result of good-faith, arms-length negotiations by attorneys with considerable experience (and success) in prosecuting and defending wage and hour claims.  *See, e.g., In re Cmty. Bank of N. Virginia & Guar. Bank Second Mortg. Litig.*, MDL 1674, 2008 WL 239650, at *8 (W.D. Pa. Jan. 25, 2008) (preliminarily approving settlement because it "was reached as a result of arm's-length negotiation between experienced counsel aided by an experienced mediator"); *Hanlon*, 2012 WL 27461, at *5 (preliminarily approving settlement that "was the product of an arms-length negotiation, conducted in good faith in front of an experienced and respected mediator"); *In re Cigna Corp. Secs. Litig.*, No. 02-cv-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("[I]t is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge

who was privately retained and served as mediator.").The Settlement also falls well within the range of reason. There are significant funds available to members of the Plaintiff Classes—$7.75 million. This amount is a reasonable and fair settlement for these claims, particularly given the inherent risks of continued litigation, including the potential decertification of the conditional collective action. *See, e.g.*, *Spellman v. American Eagle Express, Inc.*, No. 10-1764, 2013 WL 1010444 (E.D. Pa. Mar. 13, 2013) (decertifying collective action comprising 193 opt-in plaintiffs who alleged they were misclassified as independent contractors). Plaintiffs face numerous obstacles that could foreclose any recovery, including their ability to maintain these actions as collective actions under the FLSA and their ability to certify Rule 23 state-law classes, as well as the substantial evidence in the record that Assistant Branch Managers perform exempt duties, and the lack of joint employer status of the parent corporation as determined by this Court on summary judgment and as affirmed by the U.S. Court of Appeals for the Third Circuit.

The Agreement also does not unduly grant preferential treatment to the Named Plaintiffs who are to serve as Class Representatives; they are instead offered, subject to the Court's approval, reasonable Enhancement Payments that recognize the added contribution they made to the prosecution of the Enterprise Cases. The Agreement also does not provide excessive compensation to Class Counsel; the maximum fee counsel may receive under the Settlement is approximately one-third of the total Settlement Amount. Thus, there is no reason to doubt the fairness of the Settlement. *See In re Cmty. Bank*, 2008 WL 239650, at *8; *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 800 F. Supp. 1279, 1282 (W.D. Pa. 1992); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 153 (E.D. Pa. 2000); *In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001).

In addition, as previously discussed the Settling Parties have engaged in extensive

discovery, including the exchange of more than 135,000 pages of written discovery and over twenty depositions.  The Settling Parties have also served (and responded to) multiple sets of interrogatories, requests for production of documents and requests for admissions.  The Parties have also engaged in extensive motion practice and lengthy oral arguments, demonstrating that they are sufficiently well-informed as to the facts and circumstances of the Litigation.

With respect to the reaction of the members of the Plaintiff Classes to the Settlement, the Court will only be able to evaluate this factor after the notice period.

Because the standards for preliminary approval have been met, the Court should grant the instant motion so that the Notices can be sent to the members of the Plaintiff Classes and the Court can evaluate the fairness of the Settlement at a Final Approval Hearing.

### B.     The Proposed Settlement Classes Satisfy The Requirements for Certification

Pursuant to the Agreement, and in accordance with the model of other wage and hour cases, Plaintiffs hereby move to certify the following classes for settlement purposes only.  The Enterprise Groups agree, for settlement purposes only, not to oppose certification of the following classes, and not to interpose any individualized defenses that may defeat certification of these classes.

*First*, Plaintiffs seek to certify Federal Settlement Classes—one for each Enterprise Group—composed of all current and former employees of the Enterprise Groups who have worked as an Assistant Branch Manager at any time within the applicable Statute of Limitations period(s), with the exception of individuals employed as Assistant Branch Managers in the State of California.  The Federal Settlement Classes would be certified as a collective action under 29 U.S.C. § 216(b).  *Second*, Plaintiffs seek to certify State Settlement Classes—one each for the states of Illinois, Maryland, Nevada, New York, Oregon, and Pennsylvania—composed of all current and former employees of the Enterprise Groups who have worked as an Assistant Branch

16

Manager at any time within the applicable Statute of Limitations period(s).  The State Settlement

Classes would be certified under Federal Rule of Civil Procedure 23.

In order to certify a class under Rule 23 of the Federal Rules of Civil Procedure, a named

plaintiff must establish that the class meets each of the four requirements of subsection (a):  (1)

the class is so numerous that joinder of all members is impracticable; (2) there are questions of

law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class.  FED. R CIV. P. 23(a); *see also Barnes v. American*

*Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998).  The named plaintiff must also establish that the class

meets at least one of the requirements of subsection (b).

A court "may take the proposed settlement into consideration when examining the

question of certification."  *In re Prudential Ins.*, 148 F.3d at 308 (citing *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 619 (1997)).  In examining whether a settlement class is appropriate,

"the key . . . appears to be the careful inquiry into adequacy of representation."  *Id.*.  Here, and

for settlement purposes only, the Plaintiffs submit that the elements of Rule 23 are met with

respect to the proposed Plaintiff Classes, and the Enterprise Groups do not oppose certification.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."  While no specific number of class members is required to maintain a class

action, a class of more than 40 people generally satisfies the numerosity requirement.  *See*

*Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001); *Zinberg v. Washington Bancorp, Inc.,*

138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense

assumptions in order to support a finding of numerosity.").  Here, the number of potential

members of each State Settlement Class is as follows:  Illinois, 923; Maryland, 310; Nevada,

151; New York, 1067; Oregon, 200; and Pennsylvania, 890.  The numerosity requirement is therefore satisfied.

### 2.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  "[A] finding of commonality does not require that all class members share identical claims."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 530 (quotation marks omitted).

The Court previously preliminarily concluded that certain plaintiffs and other current and former Assistant Branch Managers were "similarly situated" with respect to their claims that the Enterprise Groups should not have classified them as exempt.  *See* Order Granting Conditional Certification of Collective Action (ECF No. 204).  Moreover, the Enterprise Groups have, in connection with this Settlement only, agreed to forego any individual defenses against the Plaintiff Class Members.  *See generally Wal-Mart*, 131 S. Ct. at 2545.  Therefore, for settlement purposes only, the commonality requirement is satisfied.

### 3.      Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.  The commonality and typicality requirements of Rule 23(a) "tend to merge."  *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  The "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Warfarin Sodium*, 391 F.3d at 531 (quotation marks omitted).  "A named Plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Jones*, 2007 WL 2085357, at *3.  As with the commonality requirement, the Court's previous preliminary conclusion that the

Plaintiffs are "similarly situated," coupled with the fact that the Enterprise Groups have agreed to forego any individualized defenses, means that, for settlement purposes only, the typicality requirement is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted).

Adequacy is easily met here with regard to Class Counsel's qualifications—Plaintiffs' attorneys are experienced in complex litigation, and have an established track record in wage and hour actions. *See* Muhic Decl. ¶¶ 3-8, 11; Exs. B-D. In addition, the Named Plaintiffs have no interests that are antagonistic to the class. Indeed, several of the Named Plaintiffs have demonstrated their allegiance and commitment to the Litigation by reviewing the pleadings, responding to discovery propounded by the Enterprise Groups and having their depositions taken. Therefore, for settlement purposes only, the adequacy requirement is satisfied.

### 5. Predominance and Superiority

The proposed State Settlement Classes also satisfy the requirements of Rule 23(b)(3)— predominance and superiority. Rule 23(b)(3) provides that a class may be certified if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.

Because the Enterprise Groups have agreed to forego their individualized defenses as part of this Settlement, any individualized issues that might be raised concerning job duties or damages certainly do not predominate here. *See generally Comcast Corp. v. Behrend*, 133 S. Ct. 1426, (2013); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-772 (7th Cir. 2013). Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Certification of the State Settlement Classes is superior here because in the settlement context only, absent class certification, many members of these classes would go uncompensated. *See O'Brien v. Brain Research Labs, LLC*, No. 12-cv-204, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) (finding superiority in settlement context because, *inter alia*, it was "not apparent that the money potentially recoverable by an individual class member as compared to the cost to pursue recovery through a lawsuit [wa]s sufficient to make individual litigation a realistic possibility").

In addition, resolving the State Settlement Class Members' claims in a single, consolidated settlement proceeding is far superior to individual adjudication of their claims. The Agreement provides the State Settlement Class Members with an ability to obtain prompt, predictable, and certain relief, whereas individualized litigation carries with it great uncertainty, risk, and costs, and provides no guarantee that any injured State Settlement Class Member will obtain necessary and timely relief at the conclusion of the litigation process.

Thus, Plaintiffs submit that for settlement purposes only, the proposed State Settlement Classes meet the requirements of Rule 23(a) and 23(b)(3). The Enterprise Groups do not oppose this request for class certification. The Court should therefore enter an order certifying the State Settlement Classes.

### 6.      The Collective Action Class

With respect to the Federal Settlement Classes, the critical consideration for conditional

certification of an FLSA collective action is whether the employees who choose to participate in the collective action are "similarly situated" (29 U.S.C. § 216(b))—a determination that this Court already made on a conditional basis.  *See* Order Granting Conditional Certification of Collective Action (ECF No. 204).   In addition, as set forth above, because Plaintiffs have established, for settlement purposes only, that the State Settlement Classes satisfy the Rule 23 criteria, the Federal Settlement Classes meet the requirements for certification under the FLSA as well.  The Enterprise Groups do not oppose Plaintiffs' request for collective action certification under the FLSA.

### C.    The Proposed Settlement Notices Should Be Approved By the Court

Under the Agreement, the Claims Administrator will send one of two Notices to Plaintiff Class Members.  The Opt-In Plaintiff Settlement Notice will be sent to individuals who have previously consented to sue one of the Enterprise Groups and who have already joined the Litigation, and the Federal/State Settlement Class Notice, together with a Claim and Consent to Join Form and Election to Opt-Out Form, will be sent to individuals who have not joined the Litigation and who work, or worked, for one of the Enterprise Groups during the applicable Statute of Limitations period(s).  The Notices describe the Settlement and claims procedure to members of the Plaintiff Classes.  The manner in which these notices are disseminated, as well as their content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process.  *See Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90–91 (3d Cir. 1985); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006).  These requirements are satisfied here.

### 1.    The Proposed Methods of Providing Notice Meet The Requirements For Approval

Rule 23(c)(2) provides that class members must receive the "best notice that is

practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." FED. R. CIV. P. 23(c)(2). Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]." FED. R. CIV. P. 23(e)(1). "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the Fifth Amendment." *In re Prudential*, 148 F.3d at 306.

The Agreement provides that the Claims Administrator will mail, via first class, pre-paid postage, individual Notice and, where applicable, a Claim and Consent to Join Form and Election to Opt-Out Form, to each Plaintiff Class Member at their last known address (based on the records of each Enterprise Group). *See* Agreement § II.C.3. Prior to mailing the Notice, the Claims Administrator will undertake a "Reasonable Address Verification Measure" to ascertain the current accuracy of the Last Known Address of each Class Member. For any Notice that is returned to the Claims Administrator as undeliverable, the Claims Administrator will perform a standard skip trace in an effort to locate the current address of the Plaintiff Class Member and, if such an address is located, re-send the Notice and other settlement documents to the new address. *Id*. Plaintiff Class Members who receive the Federal/State Settlement Class Notice will have sixty (60) days to respond to the Notice and file either a Claim and Consent to Join Form or Election to Opt-Out Form. *Id*. Twenty (20) days before the response deadline, the Claims Administrator will send a reminder postcard to each Plaintiff Class Member from whom it has not yet received a response. *Id*. Settlement Class members who received the Opt-In Settlement Notice will also have an opportunity to respond to the Notice and contact Class Counsel for more information and/or to object to or exclude themselves from the Settlement. *Id*.

These proposed methods of providing notice fully satisfy Rule 23(c), Rule 23(e), and due process.  *See Zimmer Paper Prods., Inc.*, 758 F.2d at 90 ("It is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.").

### 2.  The Proposed Content of the Settlement Notice Meets the Requirements For Approval

"Rule 23 of the Federal Rules of Civil Procedure contains two distinct notice provisions. Rule 23(c)(2) requires [that] notice be given to all potential members of a Rule 23(b)(3) class informing them of the existence of the class action, the requirements for opting out of the class and/or entering an appearance with the court, and the applicability of any final judgment to all members who do not opt out of the class**.**"  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 326; *see also* FED. R. CIV. P. 23(c)(2).  Rule 23(e), as well as due process, additionally requires that notice of a proposed settlement inform class members about the settlement's general terms, that the class members can seek complete information from the court files, and that any class member may appear and be heard at a fairness hearing.  *See* FED. R. CIV. P. 23(e); *Meijer, Inc. v. 3M*, No. 04-cv-5871, 2006 WL 2382718, at *10 (E.D. Pa. Aug. 14, 2006).  The purpose of adequate notice under Rule 23 and the due process clause is to enable class members to make an intelligent choice whether to opt-out of the class.  *See In re Prudential* at 326-27 (3d Cir. 1998); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996). Similarly, under Section 16(b) of the FLSA, class members are entitled to notice so that they may have an adequate opportunity to opt into the action.  29 U.S.C. § 216(b).  "Although the notice need not be unduly specific[,] the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it," or in the case of the FLSA class, of opting in.  *Meijer, Inc. v. 3M*, 2006 WL

2382718, at *10.

The proposed Notices meet these requirements.  They provide clear and accurate information as to the nature and principal terms of the Agreement, including the monetary and other relief the Settlement will provide to members of the Plaintiff Classes (as well as an explanation of the claims process and the method of allocating the settlement funds), the procedures and deadlines for participating in (or "opting-into") the Federal Settlement Classes or excluding oneself from (or opting-out of) the State Settlement Classes, the procedures and deadlines for submitting objections, the consequences of taking or foregoing the various options available to members of the Plaintiff Classes, and the date, time, and place of the Final Approval Hearing.  In addition, pursuant to Rule 23(h), the proposed Class Notice sets forth the maximum amount of attorneys' fees and costs and Enhancement Payments that may be sought by the Named Plaintiffs and Class Counsel.  *Id*.  Because the Notices comply with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court, the Notices should be approved for dissemination to the class members. *See, e.g.*, *In re Prudential*, 148 F.3d at 328; 4 Newberg on Class Actions (Fourth) §§ 8.21, 8.39; MANUAL FOURTH §§ 21.311-21.312.

### D.    The Court Should Schedule a Final Approval Hearing

Finally, the Court should schedule a Final Approval Hearing to determine that final approval of the Settlement is proper.  That hearing will provide a forum to explain, describe, or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Agreement.  In addition, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h), as well as for the award of the Enhancement Payments described herein.  The Settling Parties respectfully request that the Court schedule a Final Approval Hearing for no earlier than one hundred and twenty (120) days from the date of

the Court's entry of an order granting preliminary approval, as required by 28 U.S.C. § 1715(d).

## V.    CONCLUSION

For the foregoing reasons, the Settling Parties respectfully request that the Court grant the instant Motion and (i) enter the Preliminary Approval Order approving the terms of this Agreement as fair, reasonable and adequate and in the best interests of the Named Plaintiffs and the Members of the Plaintiff Classes; (ii) certify the Plaintiff Classes for Settlement purposes only; (iii) approve the Allocation Formula for the Settlement Payments; (iv) approve the Claim Notices; (v) approve the Claim and Consent to Join Settlement Form, and the Election to Opt Out Form; (vi) authorize the mailing of the Notices, Claim and Consent to Join Settlement Form, and Election to Opt Out Form to the respective Plaintiff Class Members; (vii) appoint Class Counsel as counsel for the Plaintiff Classes; (viii) appoint A.B. Data Ltd. as the Claims Administrator; (ix) set the Notice Response Deadline as [60 days after the Claims Administrator mails Notice to the Plaintiff Class Members]; and (x) schedule a Final Approval Hearing for the Final Approval of the Agreement no earlier than one hundred and twenty (120) days from the date of the Court's entry of an order granting Preliminary Approval

Dated:  April 12, 2013                          Respectfully submitted,


/s/ Peter A. Muhic                              /s/ Jason C. Schwartz (signed w/consent)
Peter Muhic (PA 73501)                          William J. Kilberg, P.C. (NY 1420314)
James A. Maro (PA 86420)                        Jason C. Schwartz (VA 43635)
Virginia A. Chentis-Stevens (PA 207692)         Gibson, Dunn & Crutcher LLP
Kessler Topaz                                   1050 Connecticut Avenue, N.W.
Meltzer & Check LLP                             Washington, D.C. 20036
280 King of Prussia Road                        (202) 955-8500
Radnor, PA 19087
(610) 667-7706                                  Daniel M. O'Keefe
                                                James R. Wyrsch
Gregg I. Shavitz                                Bryan Cave LLP
Shavitz Law Group, PA                           One Metropolitan Square
1515 S. Federal Hwy., Suite 404                 211 North Broadway, Suite 3600
Boca Raton, FL 33432                            St. Louis, MO 63102-2750

Joseph Allen Schreiber
Mark Petro
Schreiber & Petro, P.C.
Two Metroplex Drive, Suite 107
Birmingham, AL 35209

*Counsel for Plaintiffs*

(314) 259-2788
(314) 552-8788 (fax)

Patrick L. Abramowich (PA 74494)
Fox Rothschild LLP
625 Liberty Avenue, 29th Floor
Pittsburgh, PA 15222
(412) 391-1334
(412) 391-6984 (fax)

*Counsel for the Enterprise Groups*

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2013, pursuant to Local Rule 5.5 of the United States District Court for the Western District of Pennsylvania, I caused the foregoing to be served by electronic means through the Court's transmission facilities upon all counsel of record.

*/s/ Peter A. Muhic*
Peter A. Muhic